**Alfonso SERRANO-PEREZ and Luz de Diego-Rios, Plaintiffs, Appellants,**

v.

**FMC CORPORATION, Monsanto Company, and ICI Americas, Inc., Defendants, Appellees.**

**No. 92-2060.**

United States Court of Appeals, First Circuit.

Heard Jan. 8, 1993.

Decided Feb. 11, 1993.

Raymond Rivera–Esteves, with whom Juan A. Hernandez–Rivera was on brief, for plaintiffs, appellants.

Jorge Luis–Cordova, with whom Rivera, Tulla & Ferrer was on brief, for ICI Americas, Inc., defendants, appellees.

Before BREYER, Chief Judge, CAMPBELL, Senior Circuit Judge, and BOWNES, Senior Circuit Judge.

BOWNES, Senior Circuit Judge.

Plaintiffs-appellants raise two issues on appeal: (1) whether the district court properly granted summary judgment for defendant-appellee because of lack of evidence of causation; and (2) whether the district court abused its discretion in denying plaintiffs' motion for reconsideration of the summary judgment. We affirm the district court on both issues.

I.

THE DISTRICT COURT PROCEEDINGS

On November 14, 1990, the plaintiffs, father and mother of Carlos Serrano de Diego, filed a complaint against defendant-appellee, ICI Americas, Inc., ("ICI") and others. There has been no appeal as to the other defendants. The complaint states that it is "based on negligence in failure to adequately warn and strict liability." It alleges that plaintiffs' son, Carlos, was a farm worker for ten years and as such was required to come into contact with "chemicals and/or agricultural products" manufactured by the defendants. The complaint states that the chemicals and/or agricultural products with which Carlos Serrano came in contact "are unknown at this time." The complaint alleges that as a result of coming in contact with the chemicals and agricultural products manufactured by defendants, Carlos Serrano developed "an aplastic anemia that culminated in his death" on January 4, 1990. Damages of three million dollars were sought.

In its answer, ICI admitted that it manufactures and sells agricultural chemical products and conducted business in Puerto Rico. It specified that it manufactured and sold agricultural products under the trade name Gramaxone from 1985 to 1987.

On August 2, 1991, the district court ordered that discovery be concluded by December 31, 1991. A deadline was set for the disclosure of expert witnesses. On September 26, 1991, all parties brought a joint motion requesting an extension of the discovery cut-off date to March 31, 1992. The court responded in October of 1991 by granting a discovery extension to February 5, 1992. Trial was set for May 11, 1992.

On April 28, 1992, the court granted defendants' motions for summary judgment. On May 13 plaintiffs filed a motion for reconsideration of the summary judgment; it was denied on August 4, 1992.

II.

SUMMARY JUDGMENT

We review a summary judgment *de novo.* We read the record and all reasonable inferences to be drawn therefrom in the light most favorable to the non-moving party. *E.H. Ashley & Co. v. Wells Fargo Alarm Services,* 907 F.2d 1274, 1277 (1st Cir.1990). Summary judgment is mandated "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Under Rule 56(e):

> ... When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the

adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

"The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512.

> ... In our view, the plain language of Rule 56(e) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

In its opinion and order granting summary judgment for the defendants the court noted that defendants presented the testimony of six expert witnesses to the effect that there was no causal connection between any of defendants' pesticides and aplastic anemia. Defendants also submitted medical literature to the court showing that there was no causal link between aplastic anemia and defendants' pesticides. The court further found that plaintiffs had not presented any expert testimony indicating that defendants' pesticides caused aplastic anemia.

We have scoured the record thoroughly, including statements in Carlos Serrano's hospital records that were excluded by the district court, and have found nothing that would engender a genuine issue of material fact.[1] There was no expert testimony or medical literature offered by plaintiffs tending to establish a causal link between defendants' pesticides and aplastic anemia. It is true that the excluded hospital records indicated a link between pesticides and Carlos Serrano's illness. But there was no evidence that any of the pesticides manufactured by the defendants could have caused aplastic anemia. More to the point, there was no evidence offered by plaintiffs implicating Gramaxone, which was manufactured by the sole remaining defendant—ICI Americas, Inc.—as a causative agent of aplastic anemia. The district court concluded its summary judgment order as follows:

> Plaintiffs in this case have offered no evidence, no expert testimony, and no epidemiological data that would prove that defendants' insecticides caused Serrano's aplastic anemia. Nor have they submitted evidence that defendants' insecticides can cause aplastic anemia at all. Plaintiffs have failed to set forth any specific facts that show a genuine triable issue as to the causation of Serrano's illness.

After reviewing the record carefully in the light most favorable to plaintiffs-appellants, we are constrained to agree. The summary judgment is affirmed.

## III.

## DENIAL OF MOTION FOR RECONSIDERATION

In denying plaintiffs' motion for reconsideration of the summary judgment, the district court stated:

> On April 28, 1992, the Court granted defendants' motions for summary judgment on the grounds that plaintiffs had failed to present evidence that defendants' insecticides caused the decedent's aplastic anemia. Plaintiffs now move for reconsideration on the grounds that they have obtained the services of an expert who has stated that there may be a link between defendants' products and aplastic anemia.
>
> This case was filed in November 1990. In October of 1991, the Court granted the parties until February 5, 1992 to conclude discovery. The defendants point out, and plaintiffs admit as much in their motion, that they were not noticed of this expert until April 24, 1992, more than two months after the discovery deadline. Discovery deadlines are necessary for

1. We do not intimate that the district court erred in excluding the portions of the hospital records offered in evidence.

the proper management of cases. *See Thibeault v. Square D Co.*, 960 F.2d 239, 247 n. 7 (1st Cir.1992). Because plaintiffs' expert was secured after the discovery deadline, the Court **denies** the motion to reconsider based on their expert's testimony.

On appeal, plaintiffs claim that the district court abused its discretion in denying their motion. We disagree.

The district courts are necessarily afforded substantial discretion in ruling on motions for reconsideration. *See Mackin v. City of Boston*, 969 F.2d 1273, 1279 (1st Cir.1992), *cert. denied*, — U.S. —, 113 S.Ct. 1043, 122 L.Ed.2d 352 (1993); *Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 528 (1st Cir.1991); *see also Appeal of Sun Pipe Line Co.*, 831 F.2d 22, 25 (1st Cir.1987), *cert. denied*, 486 U.S. 1055, 108 S.Ct. 2821, 100 L.Ed.2d 922 (1988). Substantial discretion, though, does not mean unbridled discretion and a district court's decision to deny a motion to reconsider its judgment will be reviewed for abuse of discretion. *United States v. Roberts*, 978 F.2d 17, 20–21 (1st Cir.1992); *Weinberger*, 925 F.2d at 528; *Sun Pipe*, 831 F.2d at 25. In *Roberts* we reiterated how we determine whether there has been an abuse of discretion.

> In making discretionary judgments, a district court abuses its discretion when a relevant factor deserving of significant weight is overlooked, or when an improper factor is accorded significant weight, or when the court considers the appropriate mix of factors, but commits a palpable error of judgment in calibrating the decisional scales. *See Independent Oil and Chem. Workers of Quincy, Inc. v. Procter & Gamble Mfg. Co.*, 864 F.2d 927, 929 (1st Cir.1988); *In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1019 (1st Cir.1988); *United States v. Hastings*, 847 F.2d 920, 924 (1st Cir.), *cert. denied*, 488 U.S. 925, 109 S.Ct. 308, 102 L.Ed.2d 327 (1988).

*United States v. Roberts*, 978 F.2d at 21.

The broad measure of discretion enjoyed by the district courts in managing the litigation before it includes the control of pretrial discovery. *Mark v. Great Atlantic & Pacific Tea Co., Inc.*, 871 F.2d 179, 186 (1st Cir.1989); *In re Recticel Foam Co.*, 859 F.2d 1000, 1006 (1st Cir.1988), (district judge is in unique position to balance all potentially conflicting interests among the litigants and its decisions on the scope of the discovery process are ordinarily left to the judge's informed judgment).

The use of discovery closure dates and deadlines for disclosure of the identities of experts are important tools for case management. Their use, including the setting of specific deadlines, is not only within the sound discretion of the district court, but has been strongly urged by us. In *Thibeault v. Square D Co.*, 960 F.2d 239, 247 n. 7 (1st Cir.1992), we stated:

> ... [W]e urge, in the strongest possible terms, that district courts (as, indeed, is most frequently done in this circuit) set pretrial deadlines for disclosing the identities of experts. In the same vein, we heartily endorse the utilization of discovery closure dates, available under Fed. R.Civ.P. 16(b)(3), as a case management tool. After all, the adversarial cast of our system of justice, combined with the increasingly complex and unwieldy nature of modern litigation practice, frequently require that trial courts provide strong guidance to counsel and assume hands-on control of the discovery process.

Plaintiffs have advanced three related reasons for their failure to comply with the discovery deadline. They argue first that defendant made it difficult for them to determine the chemical ingredients in its pesticide-Gramaxone. This difficulty was compounded, plaintiffs claim, by the court's pretrial protective order that precluded the use of an expert by plaintiffs that was associated with the manufacturing of pesticides.[2] Both of these factors, according to plaintiffs, combined to make obtaining an expert a difficult and slow process. Plain-

2. The protective order was issued to protect the trade secrets pertaining to some of the other defendants' pesticides, but did not pertain to ICI.

tiffs assert that the court was informed of this problem at a pretrial conference on February 20, 1992. This was after discovery had closed.

Plaintiffs eventually obtained the services of an expert, Dr. Padovani, a university professor at the University of Puerto Rico, Magaguez Campus. It is not clear from plaintiffs' motion for reconsideration when the expert was retained, but it can be fairly inferred that it was after the discovery closure date of February 5, 1992. According to plaintiffs' motion for reconsideration:

> As a result of extensive research, Dr. Padovani was also of the opinion that Paraquat exposure had led to the onset of aplastic anemia. In support of that opinion, plaintiffs submitted to defendant ICI fruits of their investigation which established a causal link and consisted of scientific publications entitled *Paraquat Intoxication and Isolated Aplastic Anemia*, and *Isolated Aplastic Anemia After Paraquat Poisoning.*[3]

This information was disclosed to defense counsel on April 24, 1992, more than two months after the cut-off date for pretrial discovery.

Plaintiffs' reasons for failure to meet the discovery schedule fell far short of showing an abuse of discretion by the district court. The deadlines imposed gave plaintiffs more than a year from the filing of the complaint to obtain the services of an expert witness. Counsel for plaintiffs knew or should have known at the time the complaint was drawn that only expert testimony could establish a causal link between defendant's pesticide and Carlos Serrano's illness and death. Some preliminary spadework should have been done before the complaint was filed. We do not think the discovery schedule was unreasonably short.

In a pretrial order issued February 20, 1992, which plaintiffs signed, the court listed as an "uncontested material fact" that the plaintiffs had not proffered any competent expert testimony showing that any of the defendants' products, to which exposure was alleged, caused the aplastic anemia. By this time, trial had already been set for March 11, 1992. Defendants and the district court were noticed of plaintiffs' proposed expert witness on April 24, 1992—two months after the discovery deadline and less than one month prior to the start of the trial.

Were we to find that the district court abused its discretion in denying the motion for reconsideration, we would be flouting our own precedent, abdicating our supervisory responsibility, and turning over the control of discovery to the lawyers. *The district court's order on the motion for reconsideration is affirmed.*

*Costs on appeal are awarded to appellee.*

3. Paraquat is one of the ingredients in Gramaxone, the pesticide manufactured by defendant, ICI Americas, Inc.