**Obdulio ROSARIO–CORDERO and Otilio Martinez–Arroyo, Plaintiffs,**

**v.**

**CROWLEY TOWING AND TRANSPORTATION CO., Defendant.**

Civ. No. 93–2072 JAF.

United States District Court, D. Puerto Rico.

April 20, 1994.

Miguel A. Perez–Vargas, Santiago Puig Law Offices, San Juan, PR, for plaintiffs.

Raquel M. Dulzaides, Jimenez Graffam & Lausell, San Juan, PR, for defendant.

### OPINION AND ORDER

FUSTE, District Judge.

Plaintiffs Obdulio Rosario–Cordero and Otilio Martínez–Arroyo first filed this suit in local court against their former employer, defendant Crowley Towing and Transportation Co., alleging that they were not provided vacation benefits pursuant to Mandatory Decree No. 38 of the Minimum Wage Board of Puerto Rico, as amended, *Decretos 1982*, p. 143, and that defendant did not compensate plaintiffs with overtime pay according to Law No. 379, of May 15, 1948, as amended, 29 L.P.R.A. §§ 271–299. The case was removed to Federal Court on July 30, 1993, under the theory that plaintiffs' vacation benefit claim is preempted by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461. The overtime claim was included in the removal as a pendent claim.

The court has reviewed defendant Crowley Towing and Transportation Co.'s motion for summary judgment. For the reasons outlined below, we grant summary judgment in its favor.

## I.

### Factual Background

Plaintiffs were members of the Seafarers International Union (hereinafter referred to as "the Union") during their tenure of employment with defendant Crowley Towing and Transportation Co. (hereinafter referred to as "Crowley"). As part of a Collective Bargaining Agreement, the Union and Crowley agreed to participate in the Seafarers Vacation Plan (hereinafter referred to as "the Vacation Plan" or "the Plan"), a multiemployer plan which provided vacation benefits to the employees of its members.

The Plan provides for the establishment of a fund from contributions of the participating employers. The contributions are deposited in the Plan's bank accounts, which contain only Plan funds, and are used to pay vacation benefits to the eligible participants and the administrative costs of operating the Plan. The employer contributions are held in trust and part of the assets are invested in bonds and notes.

The Vacation Plan is a multiemployer employee benefit plan governed by a Board of Trustees in accordance with ERISA. The Plan is administered by an Administrator, who is appointed by its Board of Trustees. The Board of Trustees is composed of six members appointed by the Union and six by the employer.

The Vacation Plan triggers vacation pay when the employee has worked seventy-five days in a fifteen-month period, irrespective of whether the employee intends to take vacation leave. Both plaintiffs received the vacation payment pursuant to the Plan, and we assume that they did not take vacation leave.

## II.

### Standard for Summary Judgment

A district court should grant a motion for summary judgment "if the pleadings, depositions, and answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Lipsett v. Univer-* *sity of Puerto Rico,* 864 F.2d 881, 894 (1st Cir.1988). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), and "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The burden of establishing the nonexistence of a "genuine" issue as to a material fact is on the moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 331, 106 S.Ct. 2548, 2556, 91 L.Ed.2d 265 (1986). This burden has two components: An initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party. *Id.* Where, as in this case, the nonmoving party will have the burden of persuasion at trial, the moving party may satisfy the Rule 56 burden of production by submitting evidence that negates an essential element of the nonmoving party's claim or by showing the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. *Id.*

## III.

### Discussion

■ On the one hand, plaintiffs allege that defendant paid for, but did not allow them to enjoy, a leave of seventeen days of accrued vacation in violation of Mandatory Decree No. 38 of the Minimum Wage Board of Puerto Rico. They claim that their employer owes them $39,929 in vacation pay which includes the double penalty prescribed by the mandatory decree in cases where the employee does not enjoy the accrued vacation time for two years. Mandatory Decree No. 38 states:

> Every employee shall be entitled to vacation leave with full pay to become effective when he begins to enjoy it at a rate of one and five twelfths (1⁵⁄₁₂) days for each month in which he has worked at least one hundred (100) hours. This leave is equivalent to seventeen (17) work days per year.
>
> . . . .

*The employer who does not grant any of his employees the vacation leave to which he is entitled after having accrued it for two (2) years, shall grant him the total thus far accrued, paying him twice (2) the wage corresponding to the period accrued in excess of said two (2) years.*

Any contract whereby the employee waives, for money or other consideration, his right to actually take his vacation leave shall be unlawful and void.

(Emphasis added).

On the other hand, defendant contends that even assuming that plaintiffs never enjoyed the vacation leave as required by Mandatory Decree No. 38, their cause of action has no merit, since their vacation benefit is a plan covered under ERISA and, as such, Mandatory Decree No. 38 is preempted by the Act. The Vacation Plan is a multiemployer benefit plan and mandates the vacation pay when the employee has worked seventy-five days in a fifteen-month period, irrespective of whether or not he is going to take vacation leave from work at the time he applies for the benefit. Because the Plan entails the risks sought to be prevented by ERISA, defendant contends that it falls under the Act's coverage.

ERISA is a remedial statute aimed at protecting the interests of participants and beneficiaries of employee benefit plans by making pension plans and other benefit plans an exclusively federal concern. To that end, ERISA contains a preemption clause in Section 514(a), which reads as follows:

Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State[1] laws insofar as they may now or hereafter relate to any employee benefit plan described in Section 1003(a) of this title and not exempt under Section 1003(b) of this title.

29 U.S.C. § 1144(a).[2] The scope of ERISA's preemption clause is very broad.

The bill that became ERISA originally contained a limited pre-emption clause, applicable only to state laws relating to the specific subjects covered by ERISA. The Conference Committee rejected those provisions in favor of the present language, and indicated that section's preemptive scope was as broad as its language. *See* H.R.Conf.Rep. No. 93–1280, p. 383 (1974); S.Conf.Rep. No. 93–1090, p. 383 (1974).

*Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 45–46, 107 S.Ct. 1549, 1551–52, 95 L.Ed.2d 39 (1987), *quoting Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 98, 103 S.Ct. 2890, 2900–01, 77 L.Ed.2d 490 (1983).

In construing Section 514(a) of the law, federal courts have consistently held that the broad preemptive effect of ERISA, in addition to covering laws that expressly regulate benefit plans, also extends to state laws that "relate to employee benefit plans." *General Electric v. New York State Department of Labor,* 891 F.2d 25, 29 (2d Cir.1989).

The term benefit plan is defined in Section 3(1) to include employer plans which provide vacation benefits to employees.[3] Even though ERISA does not specifically define or specify when vacation benefits fall under ERISA's coverage, the Secretary of Labor of the United States and the federal courts have addressed the issue.

1. Puerto Rico is included in the statute's definition of State. 29 U.S.C. § 1002(10).

2. Subsection (b) contains the following exceptions to the preemption effect of ERISA: Generally applicable criminal laws; parts of the Hawaii Prepaid Health Care Act; qualified domestic relations orders as they are defined by ERISA; certain state laws requiring an employee benefit plan to provide primary coverage with respect to individuals eligible for Social Security medical assistance programs; and in certain circumstances, state laws that regulate insurance, banking or securities. None of these exceptions apply to the laws involved in this case.

3. Section 3(1), 29 U.S.C. § 1002(1), reads in pertinent part:

[A]ny plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits.

The Secretary of Labor has promulgated Regulations in which a distinction is made between vacation benefits that are payroll practices excluded under ERISA and those that are benefit plans under the Act. Payroll practices are defined in pertinent part as,

(3) Payment of compensation, out of the employer's general assets, on account of periods of time during which, the employee, although physically and mentally able to perform his or her duties and not absent for medical reasons ..., performs no duties; for example—

(i) Payment of compensation while an employee is on vacation or absent on a holiday, including payment of premiums to induce employees to take vacations at a time favorable to the employer for business reasons. 29 C.F.R. § 2510.3–1(b).

The Secretary of Labor has also issued various advisory opinions addressing the issue of when a vacation benefit is a payroll practice and when it is a benefit plan covered by ERISA.[4] *See* Department of Labor, Pension & Welfare Benefit Programs, OPINION 91–06A, 1991 ERISA LEXIS 8, January 15, 1991; OPINION 89–06A, 1989 ERISA LEXIS 2, April 7, 1989; OPINION 79–89A, 1979 ERISA LEXIS 2, December 26, 1979, and OPINION 79–14A, 1979 ERISA LEXIS 79, March 2, 1979. Opinion No. 79–14A deals with a situation similar to the one under consideration. It involved a vacation benefit plan which was established pursuant to a Collective Bargaining Agreement between a union and a trade association. The employees covered by the agreement were granted vacation pay based upon the employees' credited hours of service during a fiscal year. Each participating employer would make payments to the plan based on the number of hours credited to its employees covered by the contract. The funds would be deposited in a benefit account and then distributed to the employees. The employees would receive the vacation benefit payment regardless of whether they actually took their vacation. The Secretary held that the vacation benefit did not constitute a payroll practice within the meaning of the Regu-

lation because the vacation benefits were not paid from the employer's general assets, but from a separate fund. In addition, the Secretary held that it was irrelevant for classification purposes whether or not the employee took the leave.

In *Massachusetts v. Morash*, 490 U.S. 107, 109 S.Ct. 1668, 104 L.Ed.2d 98 (1989), the Supreme Court made it clear that multiemployer funds fall under the scope of section 3(1) of ERISA: "A multiemployer fund created to provide vacation benefits for union members who typically work for several employers during the course of a year undoubtedly falls within the scope of the Act." *Morash*, 490 U.S. at 113, 109 S.Ct. at 1672 (citations omitted). In addition, the Court distinguished the situation of an employer's vacation policy that provides for payment out of the employer's general assets from those paid out of a separate fund.

> [W]e emphasize that the case before us— and the Secretary's regulations on which we rely—concern payments by a single employer out of its general assets. An entirely different situation would be presented if a separate fund had been created by a group of employers to guarantee the payment of vacation benefits to laborers who regularly shift their jobs from one employer to another. Employees who are a beneficiary of such a trust face far different risks and have far greater need for the reporting and disclosure requirements than those whose vacation benefits that come from the same fund from which they receive their paychecks.

*Id.* at 120, 109 S.Ct. at 1675–76.

In the Crowley–Seafarers International Vacation Plan, the rights to the vacation benefits arise from a Collective Bargaining Agreement. The Vacation Plan benefit is part of a multiemployer employee benefit plan established in accordance with the provisions of ERISA. Under the Plan, plaintiffs were entitled to vacation benefits irrespective of the employer they worked for, as long as they had worked seventy-five days in a period of fifteen months.

*Massachusetts v. Morash*, 490 U.S. 107, 116, 109 S.Ct. 1668, 104 L.Ed.2d 98 (1989).

---

4. The Secretary's Advisory Opinions are not binding, but courts give them great deference.

The vacation benefits were paid to the plaintiffs out of a trust fund, where only plan money was kept. Plaintiffs had to apply directly to the Vacation Plan to obtain the benefits. Crowley did not involve itself in the application or in the payment of the benefit. Therefore, the payment of the benefit did not come out of the employer's general assets, but out of a separate fund.

The payment of the vacation benefit in this case rests on contingencies outside the employee's control. This type of situation is precisely what Congress intended to cover through the reporting, disclosure, and fiduciary requirements of ERISA, which were meant to avoid the mismanagement of employee funds that could lead to the failure of the payment of the benefits. In sum, the Vacation Plan is a benefit plan under ERISA which, therefore, preempts state law.

## IV.

### Pendent Claim

■ The pendent state claim is an independent cause of action for violations of the Puerto Rico statute which regulates overtime compensation for industries not covered by the Fair Labor Standards Act. *See* 29 L.P.R.A. §§ 272–274. We note, however, that the collective bargaining agreement in force between the Seafarers' International Union and Crowley Towing and Transportation Co. strictly regulates the payment of overtime in the context of a seaman's unique work schedule. Vessels are expected to operate on a 24–hour basis, with a fixed crew usually living on board. Their work may be harbor duty or offshore service, and the collective bargaining agreement regulates days and hours of work, work shifts, overtime, and penalty time.[5] Because the collective bargaining agreement thoroughly covers the principles of compensation unique to a vessel's service, and contains an arbitration clause applicable to the pendent dispute, we decline jurisdiction over the matter and refer it to the arbitration procedure mandated by the collective bargaining agreement.[6] *Kowalik v. General Marine Transport Corp.*, 550 F.2d 770 (2d Cir.1977); *United Brick & Clay Workers v. A.P. Green Fire Brick Co.*, 343 F.2d 590 (8th .Cir.1965); *Desert Coca Cola Bottling Co. v. General Sales Drivers*, 335 F.2d 198 (9th Cir.1964), and *Int. Longshoremen's Ass'n v. Sea–Land Service, Inc.*, 430 F.Supp. 282 (D.P.R.1975). *See Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1964). We follow the courts' preference of allowing labor disputes to be resolved through the arbitration process. *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); I *Committee on the Development of the Law under the National Labor Relations Act*, American Bar Association; *The Developing Labor Law* 1008–12 (Patrick Hardin et al. eds., 3rd ed. 1992). *See Independent Oil & Chem. Wkrs. v. Procter & Gamble*, 864 F.2d 927, 930, n. 4 (1st Cir.1988).

## V.

### Conclusion

The requirements of Mandatory Decree No. 38 are in conflict with the ERISA Vacation Plan. ERISA preempts the Decree issued by the Minimum Wage Board of Puerto Rico. We **GRANT** summary judgment in favor of Crowley Towing and Transportation Co., dismissing the complaint as to the ERISA cause of action. The pendent state claim against the defendant is **dismissed without prejudice** of arbitration pursuant to the parties' collective bargaining agreement.

**IT IS SO ORDERED.**

---

5. We express no opinion as to the potential conflict between the collective bargaining agreement and the Puerto Rico statutes on overtime compensation. The more beneficial terms of overtime compensation in the collective bargaining agreement designed to cover the realities of seamen's employment may prevail over the dispositions of 29 L.P.R.A. §§ 272–274. This issue remains open for an arbitrator to decide.

6. Absent a collective bargaining agreement with an arbitration clause, this court would also dismiss without prejudice of state-court litigation over the wage and hour state claim. *See Newman v. Burgin*, 930 F.2d 955, 963–64 (1st Cir. 1991); *Gilbert, Howard v. City of Cambridge*, 932 F.2d 51, 67 (1st Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 192, 116 L.Ed.2d 153 (1991).