Obdulio **ROSARIO–CORDERO,** et al., **Plaintiffs–Appellants,**

v.

**CROWLEY TOWING & TRANSPORTATION CO., Defendant–Appellee.**

No. 94–1628.

United States Court of Appeals, First Circuit.

Heard Nov. 7, 1994.

Decided Feb. 1, 1995.

Jane E. López, with whom Gerardo L. Santiago–Puig, Miguel A. Pérez–Vargas and Santiago Puig Law Office were on brief, for appellants.

Raquel M. Dulzaides, with whom Jiménez, Graffam & Lausell was on brief, for appellee.

Before TORRUELLA, Chief Judge, CAMPBELL, Senior Circuit Judge, and BOYLE,* Senior District Judge.

TORRUELLA, Chief Judge.

The issue presented in this case is whether appellants' claims under Mandatory Decree No. 38 of the Minimum Wage Board of Puerto Rico are preempted by § 514(a) of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.*, as amended ("ERISA"). Appellants Obdulio Rosario–Cordero and Otilio Martínez–Arroyo ("Appellants") initiated this action in Puerto Rico local court against their former employer, Crowley Towing and Transportation Company ("Crowley"), alleging that they were not allowed to enjoy vacation leave duly owed them pursuant to Mandatory Decree No. 38. The case was removed to the United States District Court for the District of Puerto Rico on Crowley's theory that Appellants' claims under Mandatory Decree No. 38 were

* Of the District of Rhode Island, sitting by desig-

preempted by ERISA. *Rosario–Cordero v. Crowley Towing & Transp. Co.*, 850 F.Supp. 98 (D.P.R.1994). Ruling on Crowley's motion for summary judgment, the district court held that the Appellants' claims were indeed preempted by ERISA. *Id.* at 102. For the following reasons, we affirm.

## BACKGROUND

Crowley operates a tugboat operation covering Puerto Rico, ports in the continental United States, the U.S. Virgin Islands, and some international ports. The nature of Crowley's operations requires its employees to travel to the different ports to provide tug services.

Most of Crowley's employees are members of the Seafarers' International Union, Atlantic, Gulf, Lakes and Inland Waters District, AFL–CIO (the "Union"). During all relevant periods, Appellants were members of the Union, and the Union was their exclusive bargaining representative. Pursuant to a Collective Bargaining Agreement (the "CBA"), the Union and Crowley agreed to participate in the Seafarers' Vacation Plan (the "Plan").

The Plan is a multiemployer employee benefit plan which provides vacation benefits to the employees of its members. The Plan is structured and governed in accordance with ERISA. It is administered by an Administrator. The Administrator, in turn, is appointed by the Plan's twelve-member Board of Trustees. Six of the Trustees are appointed by the Union and the other six by the participating employers.

The Plan provides for the establishment of a fund from contributions from the participating employers. The contributions are deposited in the Plan's bank accounts. These funds, which contain only Plan monies, are held in trust, and a portion of the assets are invested in bonds and notes. The funds are used to pay vacation benefits to the eligible participants, and to cover the Plan's administrative costs. Under the CBA, Crowley was required to make periodic contributions to the Plan for each employee.

nation.

The Plan triggers vacation pay when an employee has worked seventy-five days in a fifteen-month period, irrespective of whether the employee intends to actually take the vacation leave. During their employment, both Appellants applied for and received the vacation payment due them under the Plan's terms, although they did not take the vacation leave. Appellants are now retired.

Despite their receipt of vacation pay under the Plan, Appellants filed suit against Crowley, claiming that they were never allowed to take their vacation leave as mandated by Puerto Rico's Mandatory Decree No. 38, (the "Decree").[1] The Decree provides in relevant part:

> Every employee shall be entitled to vacation leave with full pay to become effective when he begins to enjoy it, at the rate of one and five twelves [sic] (1⁵⁄₁₂) days for each month in which he has worked at least one hundred (100) hours. This leave is equivalent to seventeen (17) workdays per year. . . .

> The employer who does not grant any of his employees the vacation leave to which he is entitled after having accrued it for two (2) years, shall grant him the total thus far accrued, paying him twice (2) the wage corresponding to the period accrued in excess of said two years. . . .

> Any contract whereby the employee waives, for money or other consideration, his right to actually take his vacation leave shall be unlawful and void.

Appellants claim, therefore, that Crowley is obligated to pay them a sum equivalent to seventeen days of work per year of service, plus the double penalty provided by the Decree.

## DISCUSSION

### A. *Standard of Review*

Because the district court granted summary judgment in Crowley's favor, we review that decision *de novo*. *Serrano–Perez v. FMC Corp.*, 985 F.2d 625, 626 (1st Cir.1993);

*Pagano v. Frank*, 983 F.2d 343, 347 (1st Cir.1993). We must determine whether the record, viewed in the light most favorable to the non-moving Appellants and with all reasonable inferences drawn in their favor, presents no genuine issue of material fact and thus entitles Crowley to judgment as a matter of law. *Serrano–Perez*, 985 F.2d at 626.

### B. *Preemption Under ERISA Generally*

■ As the Appellants correctly point out, preemption of state law is generally disfavored. *McCoy v. Massachusetts Inst. of Technology*, 950 F.2d 13, 16 (1st Cir.1991). This presumption against preemption is, however, not absolute. When Congress has expressly so provided, federal preemption of state law is mandated under the Supremacy Clause. *Id.*

ERISA preemption is, as a general matter, expansive in scope. *McCoy*, 950 F.2d at 16. In formulating the statute, Congress included a sweeping preemption clause, § 514(a), commanding that ERISA "shall supersede any and all State laws insofar as they may now or hereafter *relate to* any *employee benefit plan.*" 29 U.S.C. § 1144(a) (emphasis added). For preemption purposes, "State laws" are "all laws, decisions, rules, regulations, or other State action having the effect of law." 29 U.S.C. § 1144(c)(1). Puerto Rico is expressly included in the statute's definition of "State." 29 U.S.C. § 1002(10).

■ The United States Supreme Court has repeatedly explained that a state law "relates to" an employee benefit plan " 'if it has a connection with or reference to such a plan.' " *District of Columbia v. Greater Washington Bd. of Trade*, —— U.S. ——, ——, 113 S.Ct. 580, 583, 121 L.Ed.2d 513 (1992) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2899–2900, 77 L.Ed.2d 490 (1983)); *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 139, 111 S.Ct. 478, 482–83, 112 L.Ed.2d 474 (1990). Moreover, a state law may "relate

---

1. The Decree is one of 43 decrees promulgated by the Minimum Wage Board of Puerto Rico. The Board is authorized by Section 2 of the Minimum Wage Act of Puerto Rico, 29 L.P.R.A. § 245a, to establish mandatory decrees regarding the working conditions of particular industries. These decrees are quasi-legislative documents with the force of law. *Mendoza v. Minimum Wage Board of Puerto Rico*, 74 P.R.R. 695, 702 (1953).

to" an employee benefit plan and thereby be preempted, even if the law is not specifically designed to affect such plans, and even if its effect is indirect. *Greater Washington Bd. of Trade,* —— U.S. at ——, 113 S.Ct. at 583 (citing *Ingersoll–Rand,* 498 U.S. at 139, 111 S.Ct. at 482–83).

■ Following the Supreme Court's lead, this Circuit has also construed the words "relate to" broadly; a state law may relate to an employee benefit plan even though the law does not conflict with ERISA's own requirements, and represents an otherwise legitimate state effort to impose or broaden benefits for employees. *Simas v. Quaker Fabric Corp. of Fall River,* 6 F.3d 849, 852 (1st Cir.1993) (citations omitted).

Therefore, a state law with even an indirect effect on an ERISA-covered benefit plan is preempted, even though ERISA by its terms may not necessarily address the topic covered by the state law. For example, a state law is preempted if it restricts the choices of a benefit plan regarding its administration, structure, or benefits. *See, e.g., FMC Corp. v. Holliday,* 498 U.S. 52, 60, 111 S.Ct. 403, 408–09, 112 L.Ed.2d 356 (1990) (ERISA preempts Pennsylvania antisubrogation statute restricting structure of ERISA plans); *Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 505, 101 S.Ct. 1895, 1897, 68 L.Ed.2d 402 (1981) (ERISA preempts New Jersey statute insofar as statute prevents ERISA plans from decreasing benefits); *United Wire, Etc. v. Morristown Mem. Hosp.,* 995 F.2d 1179, 1193 (3d Cir.1993) (state statute may be preempted if its effect is to "dictate or restrict the choices of ERISA plans with regard to their benefits, structure, [or] reporting and administration"); *National Elevator Industry, Inc. v. Calhoon,* 957 F.2d 1555, 1561 (10th Cir.) (ERISA preempts Oklahoma statute insofar as it "may be used to effect change in the administration, structure, and benefits of an ERISA plan"), *cert. denied,* —— U.S. ——, 113 S.Ct. 406, 121 L.Ed.2d 331 (1992); *Arkansas Blue Cross & Blue Shield v. St. Mary's Hospital,* 947 F.2d 1341 (8th Cir. 1991) (ERISA preempts Arkansas statute regulating the assignment of benefits to health care providers), *cert. denied,* —— U.S.

——, 112 S.Ct. 2305, 119 L.Ed.2d 227 (1992). Any such state laws can avoid ERISA preemption only if they have merely a " 'tenuous, remote, or peripheral connection' " with a covered benefit plan, " 'as is the case with many laws of general applicability.' " *Combined Mgt. v. Superintendent of Bur. of Ins.,* 22 F.3d 1, 3 (1st Cir.1994) (quoting *Greater Washington Bd. of Trade,* —— U.S. at ——, n. 1, 113 S.Ct. at 583 n. 1).

This broad preemptive effect of ERISA may be surprising, given that ERISA was passed primarily to safeguard employees from the abuse and mismanagement of funds accumulated in various types of employee benefit plans. *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 15, 107 S.Ct. 2211, 2219, 96 L.Ed.2d 1 (1987). Yet, as we have explained, "the reason for the broad preemption provision is clear: By preventing states from imposing divergent obligations, ERISA allows each employer to create its own uniform plan, complying with only one set of rules (those of ERISA) and capable of applying uniformly in all jurisdictions where the employer might operate." *Simas,* 6 F.3d at 852.

Finally, we address what plans constitute "employee benefit plans" for § 514(a)'s purposes. The district court ably set forth the applicable law on this point in its opinion, *Crowley,* 850 F.Supp. at 100–101, and we follow suit here merely for the sake of thoroughness. Section 3(3) of ERISA defines employee benefit plans as plans that are either "an employee welfare benefit plan," or "an employee pension benefit plan," or both. 29 U.S.C. § 1002(3). An employee welfare benefit plan, in turn, is defined as:

[A]ny plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or beneficiaries, (A) ... *vacation benefits* ....

29 U.S.C. § 1002(1) (emphasis added). ERISA does not further define "plan, fund or program" or "vacation benefits." The Supreme Court, however, has clearly stated that "a multiemployer fund created to pro-

vide vacation benefits for union members who typically work for several employers during the course of a year ... undoubtedly falls within the scope of the Act." *Massachusetts v. Morash*, 490 U.S. 107, 114, 109 S.Ct. 1668, 1672, 104 L.Ed.2d 98 (1989). The Court distinguished such multiemployer plans, where vacation benefits are paid out of a separate fund established for that purpose, from a single employer's payroll practice of awarding vacation pay, where the payments are made out of the employer's general assets. The latter practices, the Court held, are not covered by ERISA. *Morash*, 490 U.S. at 113–14, 109 S.Ct. at 1671–73. The Court went on to state:

> [W]e emphasize that the case before us ... concern[s] payments by a single employer out of its general assets. An entirely different situation would be presented if a separate fund had been created by a group of employers to guarantee the payment of vacation benefits to laborers who regularly shift their jobs from one employer to another. Employees who are a beneficiary of such a trust face far different risks and have far greater need for the reporting and disclosure requirements [of ERISA] than those whose vacation benefits come from the same fund from which they receive their paychecks.

*Morash*, 490 U.S. at 120, 109 S.Ct. at 1675–76.

Given these principles, therefore, our task becomes clear. We must determine 1) whether the Plan at issue in this case is an "employee benefit plan" within the scope of ERISA, and if so, 2) whether the Decree "relates to" the Plan. If it does, then ERISA preempts the Decree and Appellants' claims under the Decree are foreclosed.

### C. *Is the Plan Covered by ERISA?*

■ As we explained above, the Plan is a multiemployer employee benefit plan established and governed in accordance with ERISA. Under the Plan, employees, including the Appellants here, become entitled to vacation benefits regardless of their employer, as long as they work seventy-five days in a fifteen-month period. Employees seeking their vacation benefits must apply directly to the Plan Administrator to obtain them. The benefits are then paid to employees out of a segregated trust fund established solely for that purpose, and not out of the general assets of any individual employer.

The employers' participation in the Plan consists solely of making the required contributions. The individual employers, including Crowley, are not involved in the application for or the administration of the benefits. In fact, the payment of vacation benefits under the Plan rests on contingencies and processes entirely outside of the individual employers' and employees' control.

It seems clear to us that this Plan is precisely the type of plan that Congress intended to reach in enacting ERISA. It certainly falls squarely within the description, quoted above, set forth by the Supreme Court in *Morash*, 490 U.S. at 120, 109 S.Ct. at 1675–76. Employee members of the Plan are the beneficiaries of the trust established for the payment of their vacation benefits, and thus face the risks of fund mismanagement and payment failures that ERISA was intended to prevent. If the Plan were not covered by ERISA, all of the Plan's participating employees would suddenly be exposed to these risks. For these reasons, we find that the Plan at issue here is indeed an "employee benefit plan" for ERISA's § 514(a) purposes.

### D. *Does the Decree "Relate to" the Plan?*

■ Appellants contend that the Decree does not "relate to" the Plan because 1) the Decree is a law of "general applicability" not aimed at the administration of ERISA plans; 2) the penalty imposed by the Decree does not constitute a "plan" such as ERISA is meant to regulate; and 3) if the cause of action created by the Decree were preempted, employees would be left without a remedy at law. We address each of these contentions in turn.

**1. Is the Decree a "law of general application" with a connection "too tenuous, remote, or peripheral" to relate to the Plan?**

Appellants claim that the Decree is a regulation directed at all employers in the trans-

portation industry regardless of whether they maintain an ERISA-covered plan. The Decree, they explain, mandates and regulates vacation leave and other working conditions for the protection of workers in that industry. As such, it is a law of general applicability neither directed at nor predicated upon the existence of an ERISA plan, and thus does not "relate to" the Plan.

In support of their argument on this point, Appellants submit an inaccurate statement of the law. Significantly, they incorrectly rely on the traditional preemption analysis applicable to less comprehensive federal statutes, arguing that the Decree here is not preempted because it does not interfere with ERISA's overriding concern of protecting beneficiaries of employee benefit plans from fraud or misuse of plan funds. As we have explained, however, the broad preemption clause of ERISA obliges courts to apply ERISA's preemptive effects expansively, and therefore the preemption analysis under ERISA is entirely different than for other federal statutes. Thus, the narrower preemption analysis offered by the Appellants is simply inapplicable here.[2]

Although the Decree is indeed a law of general application affecting employers regardless of their participation in plans, this does not necessarily save it from preemption. As we explained, laws of general application will be preempted if they "relate to" an ERISA-covered plan, even indirectly. *Greater Washington Bd. of Trade*, —— U.S. at ——, 113 S.Ct. at 583 (citations omitted). In the case at bar, the Decree requires that an employer pay an employee the accrued vacation pay at the time the employee takes leave. Any contract allowing the employee to receive payment in lieu of leave is null and void. Under the Decree, the employee must work at least one hundred hours in a month to accrue one and five-twelfths vacation days. Presumably, the employer may establish the employee's vacation schedule, and when the employee will receive the payment.

In many respects, therefore, the Decree's requirements differ from or conflict with the terms of the Plan. Under the Decree, the employer determines when the employee takes vacation leave or payment; under the Plan, the choice is the employee's, and the employer is not involved in the disbursement of vacation benefits. Under the Plan, an employee accrues vacation benefits after working at least seventy-five days in a fifteen-month period, whereas the Decree es-

---

**2.** The Appellants also erroneously rely on two cases to support their contentions. First, they cite our decision in *Combined Management*, 22 F.3d at 1, for the proposition that a state law is not preempted by ERISA when the law is "a matter of general application affecting all private employers, whether or not they have adopted an ERISA plan, and because the law does not affect the structure, administration, or type of benefits provided by any ERISA plans." For good reason, the Appellants do not provide a page cite or contextual explanation. The quoted sentence is indeed in the case, but in the section summarizing the holding of the district court, not in our own holding. Moreover, the *Combined Management* decision simply does not support the Appellants' arguments. Although we found in that case that the Maine state law in question was not preempted by ERISA, our decision rested on the fact that the type of state law in question, a workers' compensation law, was *expressly excepted* from ERISA's preemption clause under ERISA's own terms. *Combined Management*, 22 F.3d at 3–4 (citing ERISA § 4(b)(3), 29 U.S.C. § 1003(b)(3)). Here, by contrast, the Decree is not a law expressly excepted from ERISA's preemptive sweep.

Appellants also offer *Vartanian v. Monsanto Co.*, 14 F.3d 697 (1st Cir.1994), and contend that

the case sets forth a "two-pronged test" for determining whether a state law relates to an ERISA plan, which is not met here. Once again, the Appellants' use of case law is misguided. *Vartanian* involved a plaintiff who brought claims against his employer under both an ERISA cause of action and a cause of action for common law misrepresentation. *Vartanian*, 14 F.3d at 699. We found there that the state common law cause of action was preempted by ERISA because the court's inquiry was necessarily directed to the ERISA plan. The "test" relied upon was formulated by the Supreme Court in *Ingersoll–Rand*, for determining when a "judicially created cause of action" is preempted. *Ingersoll–Rand*, 498 U.S. at 141, 111 S.Ct. at 484. The analysis applied in *Vartanian* is not the sole, talismanic test for preemption in all circumstances, but one tailored for cases involving common law causes of action, a circumstance not presently before us. As we have already explained, this Circuit, following Supreme Court precedent, has held that ERISA preempts state laws if they relate to an ERISA plan, even indirectly. The inquiry into whether a law "relates to" a plan is necessarily fact-intensive. Here, the Decree by its terms interferes with the administration, accrual and disbursement of benefits under ERISA plans, and is therefore preempted.

tablishes a different timeframe for triggering leave. Most significantly, the Decree imposes a penalty on non-complying employers, and prohibits any alternative arrangements.

In all these respects, the Decree imposes different requirements on employers than those imposed by the Plan, and affects the accrual and disbursement of vacation benefits to employee members of the Plan. Moreover, the manner and degree to which the Decree affects the Plan is substantial, and cannot be termed "tenuous, remote, or peripheral." Indeed, the Decree by its terms would prohibit a significant aspect of the Plan, which allows employees to receive vacation payments in lieu of leave. Therefore, we find that the Decree does "relate to" the Plan for purposes of § 514(a) of ERISA.

## 2. Appellants' remaining contentions

■ Appellants also contend that the Decree does not create a "plan" such as ERISA is meant to regulate. Because the Decree is only concerned with "vacation leave" and not with the field of "vacation plans," they claim, the Decree is not preempted. Once again, this argument seems to rest on the Appellants' misguided perception of the applicable preemption principles. ERISA preempts state laws that *relate to* covered plans; it does not require that a state law establish such a plan, or expressly contemplate existing plans, in order for preemption to apply. As we have explained above, the Plan here is a covered plan under the terms of ERISA, and the Decree significantly affects its administration and restricts its terms. It is, therefore, preempted by ERISA insofar as it affects ERISA-covered plans.

Appellants finally argue that if the Decree is preempted, employees would be left without a remedy in law. They claim that Crowley seeks here to " 'don the mantle of ERISA' " to escape its obligation to comply with Puerto Rico's employment practices law (quoting *Combined Management,* 22 F.3d at 5).

Although we are sympathetic to the Appellants' argument on this point, it unfortunately is unavailing. As we explained above, one of the primary purposes of ERISA's broad preemption clause was to prevent states from imposing divergent obligations, and to there-by allow employers to create and administer employee benefit plans subject to one uniform set of regulations. *Simas,* 6 F.3d at 852. The additional burdens and penalties placed on employers by these divergent, preempted state laws are, therefore, the necessary casualties of the otherwise beneficial effects of ERISA. Unlike some other federal laws, ERISA does not merely establish a "floor" of employee benefits or rights below which states cannot fall. It sweepingly preempts any and all state laws that "relate to" a plan within ERISA's coverage, even those laws which provide stronger protections for employees. The double penalty mandated by the Decree here is a perfect example of the type of problem at which ERISA's preemption clause is directed. The preemption clause of ERISA would be meaningless if employers such as Crowley could enter, by a collective bargaining agreement, into a multiemployer vacation benefit plan, and comply with that plan, yet still be held liable under the Decree because the plan terms differ from the Decree.

Finally, we point out that if the Appellants had been improperly denied benefits, which is not the case here, they would have a cause of action under ERISA. Therefore, although they lose their legal remedy under the Decree through preemption, they gain the protections of ERISA by participating in an ERISA-covered plan.

## CONCLUSION

For the foregoing reasons, we find that ERISA preempts Mandatory Decree No. 38 insofar as it relates to ERISA-covered employee benefit plans. The district court's order is therefore *affirmed.*