Nelson **MORALES**, individually; Ada I. Negron De Morales, individually; The Conjugal Partnership existing between them; and Nelson Morales and Ada I. Negron De Morales, as parents with patria potestas and for the sole use and benefit of their minor children, Angélica Morales and Omar Andres Morales, Plaintiffs,

v.

**HEALTH PLUS, INC.;** ABC Insurance Company, Inc. (said name being fictitious but designating the insurance company that issued Health Plus, Inc. a policy for liability insurance), Defendants.

Civil No. 95–2513 (JAF).

United States District Court, D. Puerto Rico.

Feb. 21, 1997.

Andres Guillemard–Noble, Nachman, Santiago & Guillemard, San Juan, PR, for Plaintiffs.

.Heidi L. Rodriguez, Jorge E. Perez Diaz, Pietrantoni Mendez & Alvarez, San Juan, PR, James H. Fleming, James H. Fleming & Associates, San Francisco, CA, for Defendants.

### OPINION AND ORDER

FUSTE, District Judge.

Plaintiffs brought this action pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001–1461 (1988), claiming that codefendant, PCA Health Plans of Puerto Rico, Inc., formerly HealthPlus, Inc., (HealthPlus), arbitrarily denied them coverage for medical treatment. Plaintiffs have also alleged breach of contract and tort claims under local law. HealthPlus has filed a motion to dismiss, arguing that the terms of the health benefit plan did not provide coverage for services by out-of-network phy-

sicians without previous authorization. Having examined the parties' respective contentions, we find no genuine controversies of material fact and **GRANT** movant's motion.

## I.

### Fed.R.Civ.P. 12 and 56 Standards

When a court considers matters outside the pleadings in deciding a motion to dismiss pursuant to Rule 12(b), the court must treat the motion as one for summary judgment. *Cooperativa de Ahorro y Crédito Aguada v. Kidder, Peabody & Co.,* 993 F.2d 269, 272 (1st Cir.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 1792, 131 L.Ed.2d 720 (1995); *Garita Hotel Ltd. Partnership v. Ponce Federal Bank, F.S.B.,* 958 F.2d 15, 18 (1st Cir.1992). Since we have considered extra-pleading material in disposing of the present case, we convert defendant's motion to dismiss into one for summary judgment.

In general, when treating a Rule 12 motion as a motion for summary judgment, the court must notify all parties of the conversion in order to give them a reasonable opportunity to present all material pertinent to this type of motion. Fed.R.Civ.P. 12(b) & (c); *Chaparro–Febus v. International Longshoremen Ass'n. Local 1575,* 983 F.2d 325, 331 (1st Cir.1992). However, this court finds no need to mechanically enforce the requirement of express notice. *Id.* A district court does not have to give express notice when the opposing party has received movant's motion and materials and has had a reasonable opportunity to respond to them. *Id.,* citing, *Moody v. Town of Weymouth,* 805 F.2d 30, 31 (1st Cir.1986). In the present case, plaintiffs have treated the motion to dismiss as a motion for summary judgment and have obtained and submitted additional evidentiary materials to rebut movant's motion. In fact, we convert codefendant's motion to dismiss into a summary judgment motion because we have precisely considered the extraneous material that plaintiffs have appended to their opposition motion. Given these circumstances, we deem proper our treatment of the motion as one for summary judgment.

A motion for summary judgment by a defendant should be granted if the pleadings, affidavits, and documents on file show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *Lipsett v. University of Puerto Rico,* 864 F.2d 881, 894 (1st Cir.1988). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), and "genuine", "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248, 106 S.Ct. at 2510. Under Fed.R.Civ.P. 56(e), the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514.

## II.

### Factual Background

By virtue of his employment with Lehman Brothers, Inc., plaintiff Nelson Morales and his family are covered by HealthPlus' HMO Deluxe Plan, a group health and medical policy that covers only medical services provided by member physicians. Plaintiff Morales had previously enrolled in the company's Comprehensive Major Medical Plan, but in 1992, changed his and his family's coverage to the HMO plan. On May 22, 1995, plaintiff Morales' daughter, Angélica, underwent surgery for the extraction of a cancerous cerebral tumor at the University Pediatric Hospital of the Puerto Rico Health Department. After surgery, Dr. Chévere recommended whole brain irradiation with a boost to the posterior fossa once a week for thirty days.

Concerned with the delicate treatment recommended, and apprehensive of Dr. Chévere's experience in providing this type of treatment, plaintiff Morales wanted a second medical opinion from Dr. Garvin, at the Babies and Children's Hospital in New York, and made an appointment to see the doctor on June 15, 1995. On June 7, 1995, Mr.

Morales informed HealthPlus' representative, Mr. Arana, that he needed to consult with Dr. Garvin. Mr. Arana requested a referral from Angélica's treating physician and a copy of Angélica's medical record, in order to authorize coverage for Dr. Garvin's services, since Dr. Garvin was not a physician subscribed to HealthPlus' plan. On June 9, Mr. Morales submitted the requested documentation.

Three days later, on June 12, HealthPlus orally informed Mr. Morales that it would pay only $100 of the total amount of costs for Dr. Garvin's second opinion. However, HealthPlus also informed Mr. Morales that it had located Dr. Clavell, a pediatric oncologist in Puerto Rico who could examine Angélica. Like Dr. Garvin, Dr. Clavell was not a member of HealthPlus' plan. HealthPlus immediately made arrangements for Angélica to see Dr. Clavell the following day, on June 13. Upon examining the child, Dr. Clavell recommended radiation therapy twice a day for thirty days. Later that same day, Dr. Luis Montaner, HealthPlus' Vice President for Medical Affairs, spoke with Dr. Clavell, who informed him that he belonged to the same national research group as Dr. Garvin, and that he could provide Angélica the same treatment as Dr. Garvin.

The next day, on June 14, HealthPlus informed Mr. Morales in writing that although the plan did not offer coverage for evaluations or treatments provided elsewhere that can be provided in Puerto Rico, it had finally decided to provide full coverage for Dr. Garvin's consultation in order to obtain a second opinion of the case. However, HealthPlus made it clear that granting coverage for Dr. Garvin's consultation did not mean that any further treatment or study performed outside of Puerto Rico would be authorized. HealthPlus also put in writing its authorization for Dr. Clavell's services. In its letter, HealthPlus explained to Mr. Morales that Dr. Clavell was a highly respected pediatric oncologist who uses the same protocol that Dr. Garvin does in cases like Angélica's.

On June 15, 1995, Dr. Garvin examined Angélica as scheduled. The following day,

Dr. Garvin wrote a letter to Dr. Montaner discussing his evaluation of Angélica. On June 20, Dr. Montaner spoke over the phone with Dr. Garvin, who confirmed what Dr. Clavell had said previously. Dr. Garvin specifically said that he knew Dr. Clavell well and that he was sure that Dr. Clavell could perform the same treatment as the one he had recommended for Angélica. That same day, HealthPlus orally informed Mr. Morales that it would not authorize treatment by Dr. Garvin. It explained that Dr. Clavell could offer the same treatment. However, if plaintiffs decided to treat Angélica in New York, HealthPlus would only cover the costs for the equivalent treatment in Puerto Rico. Plaintiffs decided to seek treatment in New York as they had prearranged. On that same day, Dr. Garvin began treating Angélica.

On June 28, 1995, Lehman Brothers' Senior Benefits Administrator, Natalie Nance, sent a letter to HealthPlus asking for a reconsideration of its denial of coverage. HealthPlus explained that Mr. Morales had made arrangements for treatment in the Continental United States without first obtaining HealthPlus' authorization for such treatment, as required by the plan.

On July 14, 1995, Mr. Morales wrote to HealthPlus inquiring about Dr. Clavell's protocol, the cost of his services, and how San Jorge Hospital, where Angélica would be treated, compared to the Babies and Children's Hospital in New York. HealthPlus sent a letter to Mr. Morales in which it explained that only Dr. Clavell could explain his protocol to plaintiff, that costs were determined after considering several factors, and that San Jorge Hospital was a duly-accredited institution.

Plaintiffs contend that HealthPlus arbitrarily denied payment for Angélica's treatment in New York. HealthPlus allegedly denied coverage without explaining what criteria it used in arriving at its decision to authorize treatment with Dr. Clavell instead of Dr. Garvin. According to plaintiffs, this denial amounts to a fiduciary breach on the part of HealthPlus.[1] We will analyze each of these claims in turn.

1. Plaintiffs also allege that HealthPlus did not     afford them the opportunity' of a full and fair

## III.

### Analysis

#### A. Interpretation of Plan

The parties agree that the HealthPlus contract does not contain language providing a particular standard of interpretation and, therefore, this court may review the denial of benefits in this case *de novo*. *Allen v. Adage, Inc.*, 967 F.2d 695 (1st Cir.1992). We find the terms of the "Contract for Group Subscribers to the HealthPlus HMO Deluxe Health Plan" clear and unambiguous. *See Hughes v. Boston Mut. Life Ins. Co.*, 26 F.3d 264 (1st Cir.1994) (straightforward language in an ERISA-regulated insurance policy should be given its plain meaning). The plan establishes that "[h]ealth services referrals, which are not emergency services, rendered by nonaffiliated providers must be requested and recommended in writing by the affiliated physician and previously authorized by [HealthPlus]." *Docket Document No. 17, Exhibit 1*. Plaintiffs submitted a written request and referral from their primary care physician to receive a second opinion by Dr. Garvin. Although HealthPlus eventually authorized payment for this consultation, it specifically stated that such authorization did not imply that HealthPlus authorized any further treatment outside of Puerto Rico. Instead, HealthPlus authorized treatment in Puerto Rico by Dr. Clavell. In general, "if more than one type of physician is qualified to provide a particular service, [HealthPlus] may select the type of physician to be used." *Id.* Therefore, Dr. Garvin's services were not covered by the plan unless HealthPlus preauthorized them.

Plaintiffs argue that HealthPlus acted beyond its authority under the plan, since it did not have discretion to deny authorization for coverage just because the services recommended were . offered in the Continental United States and not in Puerto Rico. Although the plan does not specifically proscribe authorizing coverage of treatment by physicians located outside of Puerto Rico, the plan does define its "service area" as meaning Puerto Rico, "wherein [HealthPlus] is authorized to provide covered service to its members." *Id.* HealthPlus denied coverage of Dr. Garvin's services because Dr. Clavell, a competent physician within the service area, was available to treat Angélica.

#### B. Fiduciary Duty

▮ Plaintiffs also allege that Health-Plus breached its fiduciary duty by denying coverage for Dr. Garvin's services. Under ERISA, "a person is a fiduciary with respect to a plan to the extent ... he has any discretionary authority or discretionary responsibility in the administration of such plan...." 29 U.S.C.A. § 1002(21)(A) (1988). We consider HealthPlus a fiduciary under ERISA as it exercises discretionary control over the administration of the plan and for the payment of benefits. *Docket Document No. 17. Exhibit 1* ("[HealthPlus] may adopt reasonable norms, procedures, rules and interpretations to promote the orderly and efficient administration of this contract"). *See O'Reilly v. Ceuleers*, 912 F.2d 1383 (11th Cir.1990) (defendant HMO was considered a fiduciary under an ERISA plan as it exercised discretionary control over the administration of the plan and for the payment of benefits).

▮ Under ERISA, plan fiduciaries are to guard the interests of the participants and beneficiaries, not those of the employer. 29 U.S.C. § 1104 (1988). "In judging the actions taken by trustees in the course of managing an employee benefit plan, our inquiry is limited to determining whether the actions were arbitrary and capricious in light of the trustees' responsibility to all potential beneficiaries." *Palino v. Casey*, 664 F.2d 854 (1st Cir.1981).

Unlike comprehensive medical plans, HMOs generally cover only services provided by member physicians. The HMO plan in question is of such kind. As already discussed, plaintiff Morales had to first seek authorization for out-of-network· health services. Nonetheless, defendant made a good-

review of the denial of coverage. Since we find that defendant did not arbitrarily deny coverage, we do not discuss this claim.

faith effort to aid plaintiffs obtain the proper medical treatment for Angélica even if it meant covering the services of doctors that were outside of the plan. HealthPlus made arrangements with Dr. Clavell, a competent physician that could offer Angélica the same treatment that Dr. Garvin offered. It also authorized and paid for a consultation visit with Dr. Garvin. Because plaintiff Morales was adamant in having his daughter treated by Dr. Garvin, HealthPlus offered to reimburse plaintiffs for the treatment obtained in New York on the basis of what the same treatment would cost in Puerto Rico, and has done so. In sum, defendant provided flexibility under a plan which is contractually limited to prearranged health services.

## C. *Preemption of Local Law Claims*

Plaintiffs' causes of action under local law are preempted by ERISA. The preemption provisions of ERISA are indeed expansive. *Rosario–Cordero v. Crowley Towing,* 46 F.3d 120, 122 (1st Cir.1995). ERISA provisions supersede any and all state laws insofar as they may relate to any employee benefit plan. 29 U.S.C. § 1144(a) (1988). An employee benefit plan is either an employee welfare benefit plan or an employee pension benefit plan, or both. 29 U.S.C. § 1002(3) (1988). The term "employee welfare benefit plan" is defined in Section 1002(1) of ERISA to include any plan established or maintained by an employer for the purpose of providing for its participants, through the purchase of insurance or otherwise, medical, surgical, or hospital care or benefits. 29 U.S.C. § 1002(1) (1991). A state law "relates to" an employee benefit plan if it has a connection with or reference to such a plan. *District of Columbia v. Greater Washington Bd. of Trade,* 506 U.S. 125, 113 S.Ct. 580, 121 L.Ed.2d 513 (1992). Even if the state law only indirectly affects a benefit plan, the law can still be preempted by ERISA. *Id. See also Rosario–Cordero,* 46 F.3d at 123.

Plaintiffs' contract and tort claims implicate the federal regulation of employee benefit plans. Through the contract action, plaintiffs seek to recover benefits under the plan. Plaintiffs also assert that under local tort law, they are entitled to damages caused by defendant's capricious denial of health benefits coverage under the plan. Both of these claims direct us to examine the terms of the plan. *See Carlo v. Reed Rolled Thread Die, Co.,* 49 F.3d 790 (1st Cir.1995) (local law misrepresentation claim was preempted by ERISA since it ultimately concerned the amount of benefits plaintiffs would be entitled to receive under an early retirement plan). Consequently, plaintiffs' claims are of the kind that were intended to be preempted by ERISA.

## IV.

### *Conclusion*

We **GRANT** summary judgment for defendant. Judgment will be entered accordingly.

**IT IS SO ORDERED.**