Carmen ESCOBAR GALÍNDEZ,
Plaintiff

v.

**ORTHO PHARMACEUTICAL,
d/b/a Johnson & Johnson,
et al., Defendants**

No. CIV. 01–1480PG.

United States District Court,
D. Puerto Rico.

July 30, 2004.

Silvia G. Rico–Medina, Cabrera & Rico, San Juan, PR, Sixto Roman–Torres, Royal Palm, Bayamon, PR, for Carmen Escobar–Galindez, Plaintiff.

Alcides A. Reyes–Gilestra, Pietrantoni Mendez & Alvarez, Anabel Rodriguez–Alonso, Schuster Usera & Aguilo LLP, Carl E. Schuster, Schuster Usera & Aguilo LLP, Mariela Rexach–Rexach, Schuster Usera & Aguilo LLP, San Juan, PR, for Ortho Pharmaceutical, Johnson & Johnson Medical Caribbean, Inc., Medical Card System Inc., Defendants.

### OPINION AND ORDER

PEREZ–GIMENEZ, District Judge.

Pending before this Court is United States Magistrate Judge Justo Arenas' Report and Recommendation (hereinafter "R & R") (Docket No. 99) and the parties' objections (Docket Nos. 105 and 107). The R & R considered the motion for summary judgment filed by the defendants Ortho McNeil Pharmaceuticals (hereinafter "OMP") and Medical Card Systems (hereinafter "MCS") on August 29, 2003. (Docket No. 53.) Plaintiff Carmen Escobar Galíndez (hereinafter "Escobar") filed an opposition to co-defendants' motion for summary judgment on October 14, 2003, (Docket No. 70), to which the co-defendants replied on November 12, 2003. (Docket No. 80.) Also the R & R addressed Escobar's motion for partial summary judgment (Docket No. 56) and co-defendants' opposition. (Docket No. 74.) A reply to co-defendants' opposition was also submitted by Escobar on November 14, 2003. (Docket No. 84.) After review-

ing the report and recommendation, the evidence in the record, the arguments of the parties and for the reasons stated below, this Court **APPROVES AND ADOPTS** the R & R recommending that co-defendants' motion for summary judgment be **GRANTED** in part and **DENIED** in part. This Court also **APPROVES AND ADOPTS** the recommendation that Escobar's motion for partial summary judgment be **GRANTED**.

## FACTUAL AND PROCEDURAL BACKGROUND

The following background is recounted as described in the R & R. Escobar brings the present action under the provisions of the Employment Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* (hereinafter "ERISA"). She also asserts violations of the Puerto Rico Disability Benefit Act, 11 P.R. Laws Ann. § 20, *et seq.* (commonly referred to as "SINOT" for its Spanish acronym). A state law tort cause of action is also alleged in the second amended complaint. Escobar seeks over $100,000.00 in damages as well as an order directing the eligibility review of her claim for benefits *de novo*. The following facts are taken from plaintiff's second amended complaint. They may or may not be in controversy for purposes of summary disposition.

Escobar is a 52-year old female who had been employed by co-defendant OMP for 19 years. It is alleged that during those 19 years, Escobar worked as a packaging operator, line inspector and finally as a quality control supervisor. The second amended complaint states that she became disabled on or about the last part of April, 1999, as a result of traumatic work stress.

OMP is a corporation authorized to conduct business in the Commonwealth of Puerto Rico. It is a company engaged in, among other things, the packaging for distribution of pharmaceutical products. OMP established and maintained an em-

ployee benefit plan (hereinafter "the Plan") which included a Short–Term Disability (hereinafter "STD") benefits plan and a Long–Term Disability (hereinafter "LTD") benefits plan. The STD was 100% financed by OMP. The LTD was financed by OMP and the employees. Escobar is a participant in said Plan.

The Plan named Johnson & Johnson-the name under which OMP operates-administrator of the benefits plan. Co-defendant MCS was appointed by OMP to be the claim service organization under the terms of the Plan. Both OMP and MCS have full discretion in interpreting the terms of the STD and LTD plans, and to make eligibility determinations.

It is alleged that in April of 1999, Escobar became disabled to the point that she was unable to perform any remunerative work whatsoever. She initiated a claim process for benefits under the Plan on or about May of 1999. Said claim process was allegedly terminated on March 15, 2000, through a termination-of-benefits letter. Escobar appealed the administrative determinations on April 4, 2000 and June 27, 2000 respectively. It is alleged that none of these requests for review were responded to despite the Plan's promise to resolve such requests within 60 to 120 days. Also, according to Escobar, the administrator had in his possession a substantial amount of information in the form of medical evidence establishing Escobar's disability. Based on this, Escobar's principal allegation is that despite having been presented all the relevant information, OMP wrongly claimed she failed to supply the necessary evidence for the claim record. Escobar avers poor document management, communication and coordination between the administrator (OMP) and the claim service organization (MCS). The erratic correspondence maintained by the co-defendants did not, in Escobar's opinion,

conform to documentation, verbal communications and information supplied by her to OMP and MCS' agents.

Finally, it is alleged that due to defendants' conduct, which Escobar characterizes as arbitrary, capricious and inconsistent, she was deprived of STD, LTD and health care benefits. She argues that the conduct of the defendants in denying her entitlement to benefits under the Plan violates ERISA; specifically, 29 U.S.C. §§ 1132(a)(1)(B), 1132(c), 1133, and 1104.

This case was originally filed in the Commonwealth of Puerto Rico Court of First Instance, Arecibo Superior Part. It was removed to this court by the defendants on April 24, 2001. OMP and MCS have moved for summary judgment claiming that there are no genuine issues as to any material facts and that consequently, they are entitled to judgment as a matter of law on the following issues: First, termination of Escobar's benefits was not arbitrary and capricious, on the contrary, was made in strict compliance with the terms of the Plan. Defendants' general contention is that Escobar failed to provide MCS with the information necessary to evaluate her claim. Second, co-defendants claim that Escobar failed to exhaust the administrative remedies provided under the terms of the Plan. Third, co-defendants assert that Escobar failed to make the required contributions to the LTD plan while she was receiving STD benefits; therefore, she is not a qualified participant under the terms of the LTD plan. Finally, the co-defendants argue that Escobar similarly failed to make contributions to the health care plan during her STD leave period, and that she is, accordingly, not entitled to said benefits either.

The co-defendants also maintain that summary judgment is appropriate as to Escobar's sections 1133 and 1104 claims inasmuch as those sections of ERISA do not allow private causes of action. Esco-

bar's SINOT claim is equally precluded, according to the co-defendants, since: she failed to justify her continued absence from employment; she did not request reinstatement within one year of the onset of her disability; and she was unable to return to work. Finally, the co-defendants argue that her breach of contract and tort claims are pre-empted by ERISA.

On the other hand, Escobar moves for partial summary judgment. She claims that judgment as a matter of law is warranted with respect to her SINOT claim because under SINOT and according to recent interpretations by the Puerto Rico Supreme Court, an employer may not terminate an employee before the lapse of one year from the onset of the disability and must preserve the worker's employment position. The employer is also obligated to reinstate the employee to the same position within the one year period. Since Escobar's SINOT benefits began on May 24, 1999 and were terminated on March 15, 2000, it is undisputed, according to plaintiff, that a violation of SINOT occurred.

## SUMMARY JUDGMENT STANDARD

■ Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). To succeed on a motion for summary judgment, the moving party must show that there is an absence of evidence to support the nonmoving party's position. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion, the burden shifts to the nonmoving party to set forth specific facts showing there is a genuine issue for trial and that a trier of fact could reasonably find in its favor. *Santiago–*

*Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d 46, 52 (1st Cir.2000). The party opposing summary judgment must produce "specific facts, in suitable evidentiary form," to counter the evidence presented by the movant. *Lopez–Carrasquillo v. Rubianes,* 230 F.3d 409, 413 (1st Cir.2000) (quoting *Morris v. Gov't Dev. Bank of P.R.,* 27 F.3d 746, 748 (1st Cir.1994)). A party cannot discharge said burden by relying upon "conclusory allegations, improbable inferences, and unsupportable speculation." *Id.; see also Carroll v. Xerox Corp.,* 294 F.3d 231, 236–37 (1st Cir.2002) (quoting *J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc.,* 76 F.3d 1245, 1251 (1st Cir.1996)) (" '[N]either conclusory allegations [nor] improbable inferences' are sufficient to defeat summary judgment.").

■ The court must view the facts in light most favorable to the nonmoving party, drawing all reasonable inferences in that party's favor. *See Patterson v. Patterson,* 306 F.3d 1156, 1157 (1st Cir.2002). A fact is considered material if it has the potential to affect the outcome of the case under applicable law. *Nereida–Gonzalez v. Tirado–Delgado,* 990 F.2d 701, 703 (1st Cir.1993).

## DISCUSSION

The following discussion follows, almost precisely, the logic and reasoning of the R & R, with the addition of this Court's discussion of the parties' various objections.

### A. *Co-defendants' Motion for Summary Judgment*

There are several arguments advanced by the co-defendants in support of their motion for summary judgment. Co-defendants argue that the denial of benefits was not arbitrary and capricious but supported by substantial evidence in the record. It is further asserted that Escobar failed to submit all the necessary information requested by MCS for an evaluation of her claim. In addition, the co-defendants contend that: (1) Escobar failed to exhaust the remedies provided under the Plan; (2) she is not a qualified participant for LTD and health care benefits; (3) she has failed to state claims under sections 1133 and 1104 of ERISA; (4) her termination was not in violation of SINOT; and (5) her state breach-of-contract and tort claims are pre-empted by ERISA.

In response to co-defendants' motion for summary judgment, Escobar filed a document titled "Plaintiff's Concise Statement of Facts in Opposition to Defendants [sic] Motion for Summary Judgment." (Docket No. 70.) This submission contains the statement of contested facts that the local rules of this district mandates (Local Rule 56(c)) with specific references to evidence in the record. It lacks, however, a memorandum of law, which is also required by the local rules (Local Rule 7(b)). Despite such shortcoming, U.S. Magistrate Justo Arenas addressed whether Escobar has succeeded in meeting her burden of showing that there is a genuine issue for trial and that the trier of fact could reasonably find for her.

### 1. *The Denial of ERISA Benefits*

■ In cases where the court is asked to review the denial of benefits under ERISA, there is a threshold matter that must be resolved first: the standard of review. Under ERISA's civil enforcement provision,[1] judicial review of a benefit enti-

---

1. Plaintiffs bring this action specifically under section 502 of ERISA which provides in pertinent part:
 (a) Persons empowered to bring a civil action

A civil action may be brought-

tlement decision may be the subject of two separate standards. On the one hand, if the plan "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," then the court must apply the deferential "arbitrary and capricious" standard of review. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Leahy v. Raytheon Co.*, 315 F.3d 11, 15 (1st Cir.2002). In other words, the arbitrary and capricious standard applies if a reading of the plan in question indicates a clear grant of discretionary authority to the administrator in determining the eligibility for benefits of a participant or beneficiary. *See Terry v. Bayer Corp.*, 145 F.3d 28, 37 (1st Cir.1998). If on the other hand, no such clear grant of discretionary authority exists, the standard of review is *de novo*. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. at 115, 109 S.Ct. 948; *see also Rodriguez–Abreu v. Chase Manhattan Bank, N.A.*, 986 F.2d 580, 583 (1st Cir.1993).

 The Plan in the present case provides the administrator full and complete authority to interpret the terms of the Plan and to determine the eligibility for benefits of a given participant or beneficiary. In its article VII, the Plan provides as follows:

## ADMINISTRATION
FIDUCIARY

The Plan Administrator and named fiduciary shall be the Johnson & Johnson Pension Committee (hereafter referred to as "the Pension Committee").

POWERS—GENERAL

(1) by a participant or beneficiary-

. . . . .

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]

The named fiduciary shall control and manage the operation and administration of the Plan, may designate persons to assist in carrying out fiduciary duties, and may allocate responsibility for the operation and administration of this Plan.

The Pension Committee has the sole authority to:

. . . . .

(10) Exercise its discretion to determine eligibility for benefits, to construe and interpret the provisions of the Plan and to render conclusive and binding decisions and determinations based thereon.

(Docket No. 53, Ex. 1, at 28–29.) Similarly, the record also establishes that OMP, and its delegate, the Claims Service Organization (hereinafter "MCS"), has the power to interpret and apply the provisions of the LTD plan and has complete discretion to make determinations under the Plan including findings of fact, eligibility for benefits, resolution of disagreements and so on. (*Id.*, Ex. 2, at 29 and its Official Translation, Docket No. 72, Ex. 2, at 17.) In light of the fact that the Plan at issue clearly gives the administrator the authority and discretion to make eligibility determinations and to interpret the terms of the plan [2], the analysis of the denial of benefits to Escobar is conducted under the arbitrary and capricious standard. Under said standard, the court must "ask whether the aggregate evidence, viewed in the light most favorable to the non-moving party, could support a rational determination that the plan administrator acted arbitrarily in denying [Escobar's] claim for

29 U.S.C. § 1132(a)(1)(B); *see also Lopes v. Metro. Life Ins. Co.*, 332 F.3d 1, 4 n. 4 (1st Cir.2003).

2. Escobar admits that co-defendants have full discretion to make eligibility determinations and to interpret the terms of the Plan. (*See* Docket No. 70, at 1.)

benefits." *Twomey v. Delta Airlines Pilots Pension Plan*, 328 F.3d 27, 31 (1st Cir.2003) (quoting *Leahy v. Raytheon Co.*, 315 F.3d at 18). The administrator's decision will be upheld if it is reasoned and based on substantial evidence. *Gannon v. Metro. Life Ins. Co.*, 360 F.3d 211, 213 (1st Cir.2004) (citing *Vlass v. Raytheon Employees Disability Trust*, 244 F.3d 27, 30 (1st Cir.2001)). Substantial evidence is, in turn, evidence that is sufficient to support a conclusion. *Id.* The existence of contrary evidence does not, in itself, make the decision of the administrator arbitrary. *Id.*

### (a) STD Benefits

■ The facts relevant to this issue, and to which there are no major disputes, are the following. The STD plan at issue here provides that benefits shall be paid in the event that an employee is absent from work for a minimum of five consecutive working days due to illness or injury. These benefits are paid for a maximum of 26 weeks. A portion of the payments made are intended to comply with SINOT. The record establishes that Seguros de Vida Triple–S was the insurance carrier and administrator of OMP's SINOT policy. Under the Plan, however, STD benefits are paid in excess of those provided to comply with SINOT.

In order to apply for STD benefits, a participant must file a claim form, an application for medical leave and a medical certificate form completed by the employee's treating physician explaining the disability. Pursuant to the terms of the Plan, benefits may be terminated if the employee fails to provide medical verification or to participate in the evaluation process. The Plan also provides that an employee who is denied benefits may appeal the decision by submitting a written request to MCS within 30 days of the notification of the denial.

In this case, Escobar exhausted sick leave and vacation time before requesting the STD benefits. She filed her request on May 17, 1999. Escobar submitted a medical certificate from Dr. Carlos Blanco in support of her application. Her diagnosis was cervical paravertebral muscle spasm. Dr. Blanco also stated that Escobar was receiving treatment for anxiety and depression. STD benefits were initially approved through June 11, 1999. Subsequently, in a letter dated June 8, 1999, Escobar was referred to a Functional Capacity Evaluation. MCS also requested, by letter sent June 9, 1999, a copy of Escobar's medical record with Dr. Oscar Valdez, who treated her back condition. Escobar did not attend the Functional Capacity Evaluation, at which point she was advised, through letter dated July 9, 1999, that her failure to cooperate with the evaluation process was grounds for termination of benefits and the closing of her case.

On or about July 22, 1999, MCS received through OMP, a medical certificate from Dr. Domingo Cordero placing Escobar on rest until August 20, 1999. MCS alleged that it was around this time that it learned that Escobar was also receiving treatment for a mental condition. MCS decided to review Escobar's claim in order to determine whether she was suffering from a mental condition that might justify disability benefits. On September 14, 1999, MCS requested pertinent medical evidence to evaluate Escobar's STD claim in regards to her emotional condition. On September 14, 1999, MCS received a certificate regarding Escobar's psychiatric treatment with Dr. Cordero, which included treatment dates and partial hospitalization. This evidence was referred to Dr. Vivian Charneco–MCS psychiatry consultant-who recommended that STD benefits be approved. Dr. Charneco also recommended that MCS obtain a copy of Escobar's medi-

cal record with Dr. Cordero and that she be referred to an independent medical evaluation. MCS approved the STD benefit for Escobar thru September 22, 1999. On October 1, 1999, MCS referred Escobar to an independent psychiatric evaluation to be performed by Dr. Raúl López, in order to determine her mental condition. Escobar was at that time requested to produce copies of the medical record maintained by Dr. Cordero. She attended the evaluation with Dr. López but did not provide the requested records. Through a letter dated October 25, 1999, MCS again requested a copy of Escobar's medical records with Dr. Cordero. She was granted until November 9, 1999, to supply such documentation. The records were never produced, and as a result, on December 6, 1999, MCS notified Escobar that her STD benefits were denied due to her failure to cooperate with the evaluation process. She was also advised of her right to appeal and of the fact that she needed to submit all the evidence she wanted considered in the resolution of said appeal.

By way of letter dated January 3, 2000, and received by MCS on January 12, 2000, Escobar appealed the decision to terminate her STD benefits. She once again failed to submit copy of the records with Dr. Cordero. Escobar did produce some additional medical evidence. Such evidence was submitted to Dr. Charneco on February 4, 2000, for a recommendation as to whether a finding of disability was appropriate. Dr. Charneco recommended that the appeal be denied for the failure of Escobar to submit the requested medical records. On March 3, 2000, MCS notified Escobar of its decision to uphold the denial of STD benefits.

The parties' disagreement centers on the allegation that Escobar failed to submit requested medical evidence and to generally cooperate with the evaluation process. The "summary plan description" relied on by the co-defendants[3] states: "[i]f you do not provide the medical verification when requested, or refuse to participate to obtain the medical verification, your of [sic] Short–Term Disability benefits will be terminated." (Co-defendants' Statement of Uncontested Facts, Docket No. 53, Ex. 2, at 9; and its Certified Translation, Docket No. 72.)

There is a dispute as to the following facts. First, the co-defendants argue that Escobar failed to follow the established plan procedures by submitting her medical evidence to the nurse at OMP's infirmary and not directly to MCS. (*Id.* at 4, ¶ 12.) To counter this argument, Escobar argues that since the beginning of the claim process the personnel at OMP accepted that she submit the evidence through the company's nurse as it was customary for employees claiming disability benefits. (Plaintiff's Concise Statement of Facts, Docket No. 70, at 3, ¶ 17.) In addition, Escobar contends that co-defendants never instructed her that such procedure was incorrect, specifically when the infirmary personnel took it upon themselves to assist in receiving the information at OMP's facilities in Manatí (Escobar's hometown at the time) and forwarded the same to MCS in San Juan. (*Id.*)

Second, the co-defendants argue that Escobar failed to attend a Functional Capacity Evaluation. (Co-defendants' Statement of Uncontested Facts, Docket No. 53, at 4, ¶ 20.) She was also asked to provide a copy of her medical records with Dr.

---

3. Escobar maintains that she has based her claims on the procedures and description of benefits set forth in Johnson & Johnson's Manual del Empleado ("Employee Manual") provided to her by OMP, and not the STD/LTD plans identified by the co-defendants as Exhibits 1 and 2 of Docket No. 53. ("Summary Plan Description or SPD.")

Oscar Valdez which the co-defendants contend she failed to submit. (*Id.* at 5, ¶ 21.) Escobar claims that she was simply unaware of the appointment and that she did not receive co-defendants' June 8, 1999, letter. (Plaintiff's Concise Statement of Facts, Docket No. 70, at 4, ¶ 22.) She claims that the defendants knew she had been hospitalized from May 24, 1999 to June 11,1999, yet in bad faith characterized her difficulties as a failure to cooperate with the evaluation process. (*Id.*)

Third, co-defendants contend that through letter dated October 1, 1999, MCS referred Escobar to an independent psychiatric evaluation. (Co-defendants' Statement of Uncontested Facts, Docket No. 53, at 7, ¶ 32.) She was also asked at that time to produce her medical record with Dr. Domingo Cordero. (*Id.*) Co-defendants allege that plaintiff attended the evaluation but failed to produce the requested records. (*Id.* at ¶ 33.) On October 25, 1999, Escobar was given until November 9 to produce the requested records. (*Id.* at ¶ 34.) She never provided the copy of the medical records with Dr. Cordero and as such, the STD benefits were denied for failure to cooperate. (*Id.* at ¶ 36.)

With respect to the failure to produce the medical records, Escobar asserts the following. Initially, she signed and sent two authorizations to enable PAE (Programa de Ayuda al Empleado at OMP) to secure the medical information from her treating psychiatrist Dr. Cordero. Escobar contends that she confronted difficulties obtaining the medical records from Dr. Cordero who cited sections of the Mental Health Code in support of his refusal to produce the same. (Plaintiff's Concise Statement of Facts, Docket No. 70, at 5–6, ¶ 24.) It is further claimed that MCS's records show erratic and inconsistent instructions to plaintiff. (*Id.* at 7–8, ¶ 34.) She maintains that having prior

knowledge that she could not obtain the full record from Dr. Cordero, MCS continued to instruct her to provide medical *certificates* as opposed to medical *records* to sustain the continuation of benefits. (*Id.*) Escobar also alleges that Dr. Cordero agreed to provide medical summaries, progress notes and certificates. (*Id.*) She continued to supplement the record with such medical summaries and certificates as requested by MCS which, according to her, makes the termination of STD benefits an arbitrary decision. In fact, Escobar submits that MCS instructed her daughter, in view of her inability to obtain the records, to secure medical certificates stating that she had been receiving treatment from September 22, 1999, to October 19, 1999, and that she now resides in Massachusetts where she is also receiving treatment. (*Id.* at ¶ 35.) These instructions were given, in order to keep her case from being closed. (*Id.*)

The R & R conducted an analysis of the arbitrary and capricious standard accordingly, stating:

> There is no dispute that the terms of the Plan at issue in this case provide, within the discretion afforded to the administrator, the authority and ability to request from a participant additional medical information. Similarly, there is no dispute that Escobar was asked for additional information specifically, her medical record from Dr. Cordero. But at issue is not whether the decision to deny the benefits was arbitrary in the traditional sense where the court must determine if the decision was supported by substantial evidence. The question is whether the decision to deny the benefits for the alleged failure to cooperate was arbitrary and capricious." (R & R at 18)

Magistrate Judge Justo Arenas concluded, "In the face of specific factual allegations

supported by the record of co-defendants' knowledge of Escobar's difficulties obtaining the records from her treating psychiatrist and subsequent instruction directed to provide an alternative in order to keep the case open, it is at least questionable that co-defendants' decision was within the bounds of their discretion." (R & R at 19). He continued:

> In addition, there is a factual controversy as to many other marginal issues that would shed light regarding the decision to terminate the benefits. For instance, there is a dispute regarding the receipt of correspondence, the appropriateness of Escobar submitting medical evidence through OMP's infirmary personnel and PAE, the refusal of Dr. Cordero to provide the relevant records, co-defendants' knowledge of said situation, the instructions given to Escobar's daughter and plaintiff's actions to supplement the record in accordance with said instructions. *Id.*

Magistrate Judge Justo Arenas stated that it is evident from a review of the evidence described above that at this stage it is not appropriate to summarily dispose of plaintiff's claim under ERISA's civil enforcement provision. A factual dispute remains as to whether termination of plaintiff's benefits was arbitrary and capricious, such conclusion cannot be reached in light of contrasting evidence and positions. Viewing the evidence in the light most favorable to the non-moving party, in this case Escobar, co-defendants' motion for summary judgment is **DENIED**.

Defendants' objections allege that the R & R does not properly apply the arbitrary and capricious standard. Defendants' contention that the Magistrate Judge misapplied the arbitrary and capricious standard is misplaced.

Defendants put great emphasis on the Magistrate Judge's statement "at issue is not whether the decision to deny the bene-fits was arbitrary in the traditional sense where the court must determine if the decision was supported by substantial evidence. The question is whether the decision to deny the benefits for the alleged failure to cooperate was arbitrary and capricious." (R & R at 18).

Defendants then go on to state that "in denying summary judgment because of 'factual disputes' regarding Escobar's reasons for not providing these records, the Magistrate, in effect, *questioned* the decision to deny benefits, substituting his judgment for that of the administrator, rather than focusing on whether or not there was substantial evidence on the record to support it." (Docket No. 107 Defendant's Objections to the R & R at 7). Further, defendants claim that the Magistrate Judge "should have been mindful that" in applying an abuse of discretion standard, the reviewing court must affirm if a reasonable person could have reached a similar decision, given the evidence before him, not that a reasonable person would have reached that decision. (*Id.*).

This court, having read the R & R, as well as Defendant's objections, considers Defendants' characterization of the R & R to be in error. While Magistrate Judge Justo Arenas takes the analysis out of what he calls "the traditional sense" his analysis merely includes a procedural source of evidence relied upon by the plan administrator along with the substantive evidence of the record. It is all evidence that was part of the record. And the enormous gray areas surrounding the medical records and plaintiffs' cooperation lend credence to the Magistrate Judge's reasoning.

To illustrate—here, the plaintiff was asked to produce records from a third party. The acts of the third party interfered with the ability of the plaintiff to provide the complete requested records.

The plan administrator therefore punished the plaintiff due to the third party's failure to provide the records. Meanwhile, all that can be expected of the plaintiff is to take all reasonable steps in order to have the third party comply with the administrator's request. Thus, what the Magistrate Judge goes on to explain in his R & R is that to deny plaintiff's claim based upon a third party's failure to act could not have been reasonable. Given that this was the sole (or primary) reason for the dismissal of plaintiff's claim, it is very easy to understand how the Magistrate Judge did not feel that the administrator's decision was based on any reasonable grounds. Or, in other words, how a reasonable person could have come to this conclusion. Or, in yet other words, the decision was arbitrary and capricious since it was based on a procedural failure of the plaintiff that was not, in fact, committed by the plaintiff. Thus, in accordance with the R & R, defendants' motion for summary judgment as it pertains to the claim for STD is **DENIED**.

### (b) LTD Benefits

Next is co-defendants' argument that they are entitled to summary judgment with respect to Escobar's claim for LTD benefits. The crux of their contention is that Escobar did not exhaust plan remedies with respect to her LTD claim prior to the filing of the instant case. Specifically, co-defendants claim that in accordance with the terms of the Plan, Escobar had to deem her claim denied when a decision from the administrator was not furnished within reasonable time. In other words, at the lapse of 90 days, Escobar needed to consider her LTD claim denied and proceed to exhaust the remedies provided by the Plan, namely the filing of an appeal, before she could be allowed to seek judicial review of the denial. Co-defendants also claim entitlement to summary judgment on this issue because Escobar failed to make the required contributions to the LTD plan while receiving STD benefits. According to the co-defendants, she was not a participant in the LTD plan because even though she contributed to said plan during 19 years, she failed to make the required contributions personally while she was receiving STD benefits. Finally, the co-defendants submit that since her STD benefits were terminated prior to the 26 week elimination period mandated by the Plan for eligibility to LTD benefits, she is simply not entitled to such a claim.

■ As the co-defendants correctly point out, ERISA requires that an employee disability benefits plan provide the participants whose claims are denied the opportunity for review by the fiduciary denying the claim. 29 U.S.C. § 1133(2); *Drinkwater v. Metro. Life Ins. Co.*, 846 F.2d 821, 825 (1st Cir.1988). While ERISA does not contain an express statement that a plaintiff must exhaust all administrative remedies before bringing suit, *Drinkwater v. Metro. Life Ins. Co.*, 846 F.2d at 825, courts have consistently held that plan beneficiaries must exhaust the administrative remedies provided by a plan before commencing suit. *Terry v. Bayer*, 145 F.3d at 40; *Makar v. Health Care Corp.*, 872 F.2d 80, 83 (4th Cir.1989) ("It would be 'anomalous' if the same reasons which led Congress to require plans to provide remedies for ERISA claimants did not lead courts to see that those remedies are regularly utilized.").

> Congress' apparent intent in mandating these internal claims procedures was to minimize the number of frivolous ERISA lawsuits; promote the consistent treatment of benefit claims; provide a nonadversarial dispute resolution process; and decrease the cost and time of claims settlement.

*Makar v. Health Care Corp.*, 872 F.2d at 83 (citing *Amato v. Bernard*, 618 F.2d 559, 567 (9th Cir.1980)).

■ While co-defendants argue that Escobar failed to exhaust the Plan's remedies by failing to deem her LTD application denied and filing an appeal as provided under the Plan, plaintiff contends that the letter sent by her on January 3, 2000, and the one sent by her daughter on April 5, 2000, both had the purpose of appealing the decision denying STD as well as LTD benefits. Even though it is not clear from these communications that Escobar was also appealing the denial of her LTD, it is apparent from the record that plaintiff's LTD benefits application was not even considered because STD benefits were terminated before the completion of the 26–week elimination period. (Co-defendants' Statement of Uncontested Facts, Docket No. 53, at 9, ¶ 49.) Therefore, the issues are interrelated. If it is determined that the letters were sufficient to constitute a request for review of the denial of STD benefits, the issue becomes again whether such decision was arbitrary and capricious. Because LTD benefits are not granted unless a participant had received STD benefits for over 26 weeks, a request for review of the denial decision may encompass the tacit denial of LTD benefits as well.

The review procedure stated in OMP's plan states in relevant part that a claim for benefits shall be decided in a reasonable time not to exceed 90 days from the submission of the claim. The Plan also provides that if a participant fails to receive a notification from the claim service organization within the same period, he or she should consider the claim denied and resort to the appeals procedure. Plaintiff submitted her application for LTD benefits on December 28, 1999. Co-defendants assert that such application was not even considered since Escobar did not comply with the 26 week elimination period. (*Id.*) As stated, it is not completely clear that the January 3 and April 4, 2004 letters can be construed as an appeal of the denial of LTD benefits. But inasmuch as there is a factual dispute regarding the reasonableness of the denial of STD benefits, and the elimination period is essential for the availability of LTD benefits, summary judgment is precluded.

■ With respect to co-defendants' allegation that plaintiff is not a participant in the LTD plan because of the failure to make the required contributions, Escobar raises a significant issue. While the co-defendants rely on the terms of the Plan as stated in the LTD and SPD, Escobar argues that at all times, she has relied on the procedures and description of benefits stated in the "Johnson & Johnson Manual del Empleado." Co-defendants submitted Exhibits 1 and 2 in support of their summary judgment motion. Exhibit 1 is titled Long Term Disability Income Plan. Exhibit 2 is referred to as SPD (Summary Plan Description). (Docket No. 53, Exs. 1 and 2.) The co-defendants rely on both as containing the governing terms of the STD and LTD plans. Escobar argues on the other hand that for 19 years, the requisite contributions were deducted from her salary. She also claims that during part of the STD period that is how the contributions were made in accordance with the "Manual del Empleado" and that she never received a communication that the process would be altered.

Escobar cannot rely solely on the "Manual del Empleado" to assert that it includes all the terms of the plan. Such manual includes a note stating:

> This section represents a summary of the main provisions of the Disability Income Benefits Plan. If there is any difference between this section and the documents of the Plan, the Documents of the Plan shall direct all issues. Examples of the Documents of the Documents of the Plan are available from your Benefits Administrator upon request of the interested parties.

(Employee Manual, Docket No. 92, at 14.) Therefore, the terms included in the LTD plan as well as in the SPD control.

Looking at the SPD it appears that in fact an employee is required to make LTD contributions while on STD. (Docket No. 53, Ex. 2, at 22.) In addition, the SPD states that LTD coverage ends, among others, the first day of the month in which a participant fails to make the required contribution. (*Id.* at 23.) However, the SPD does not specify how such contributions are to be made. It does not state whether the contribution will be retained from the participant's income or whether the participant must actually make the contributions. A factual dispute remains specifically in light of Escobar's contention that the LTD contributions were deducted from her income during part of her STD period and in light of the fact that the Manual del Empleado states that contributions are deducted from income while the SPD is silent.

Defendants object to the Magistrate Judge's recommendation concerning Plaintiff's Long Term Disability benefits. Again, defendants point to a defect in plaintiff's actions that can arguably be attributed to another party. Defendants' claim that plaintiff is not entitled to LTD because she did not make payments while on STD. However, as is made clear by the multiple forms and allegations and cross arguing, the payments for LTD were automatically deducted from plaintiff's pay while employed. Then, the LTD payments were deducted from the STD payments. And, only after it appears defendants unlawfully terminated plaintiff's STD payments, did the LTD payments cease. Now, defendants' argument, if read on its own, provides a story of how they are not in the position to read plaintiff's mind, and that the terms of, not the employee's manual, but of the plans themselves, makes it clear that plaintiff was responsible for continuing payments. Also, that plaintiff was able to inquire into how to make payments.

The court is moved by defendants' arguments and understands the predicament the Magistrate Judge's R & R places them in. Defendants' were faced with a disabled worker legally receiving STD payments during her initial year out of work, which included time spent in the hospital. Prior to becoming eligible for LTD, the employer abruptly, and illegally, stopped STD payments. In addition to stopping the STD payments, the employer in effect stopped making the employee's LTD payments. Thus, shortly thereafter, due to the terms of the plan's guidelines, not the employee's manual, the employee allegedly became ineligible to receive LTD benefits.

The defendants' arguments are somewhat circular and do not merit dismissal of plaintiff's claims at this stage. Defendants stopped payments which included employee insurance deductions shortly before plaintiff became entitled to them—with no legal grounds to do so. Then, defendants quickly stated that the employee was not entitled to the LTD benefits.

The defendants are correct that the terms of the Plan dictate. Yet, the R & R is also correct to point out the confusion that defendants' actions created as far as payment method was concerned. If, in effect, defendants manipulated plaintiff's STD payments to cause a lapse in her LTD insurance payments, then the defendants cannot now expect this Court to entertain such gamesmanship. It would set a dangerous precedent to allow the set up of such a tight LTD benefits plan (here, it is explained that after first non-payment employee is no longer entitled to LTD benefits) only to then allow the employer to violate its obligations thereby making the possibility of non-compliance by the employee almost certain.

Due to the inability of this Court to determine at this time Plaintiff's eligibility for LTD benefits, summary judgment as to this issue is **DENIED**.

### (c) Health Care Benefits

 With respect to Escobar's denial of health care benefits claim, the co-defendants similarly argue that she failed to make the required contributions in the period she was receiving STD benefits. Nevertheless, like with the LTD benefits, a factual controversy exists precluding judgment as a matter of law.

### 2. The Section 1133 Claim

 Next the co-defendants submit that inasmuch as the amended complaint alleges a cause of action under 29 U.S.C. § 1133, the plaintiff has failed to state a claim. It is the co-defendants' position that section 1133 merely imposes certain obligations on a plan and not to anyone else. In addition, according to the co-defendants, that section simply requires that every plan under ERISA comply with certain regulations and recovery cannot be grounded on an alleged violation to said section.

The amended complaint does not specifically state a cause of action under section 1133. It merely states that co-defendants' conduct violated such section. Section 1133 provides that,

In accordance with regulations of the Secretary, every employee benefit plan shall-

(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133. Furthermore, it has been held that this section only imposes obligations on the plan and not the plan administrator. *Stuhlreyer v. Armco, Inc.,* 12 F.3d 75, 79 (6th Cir.1993); *see also Hamilton v. Mecca, Inc.,* 930 F.Supp. 1540, 1552 (S.D.Ga.1996) (citations omitted) ("[C]ourts have generally concluded that ERISA does not provide a private right of action for damages to compensate a participant for a plan's failure to comply with § 1133.").

In view of the above, and in view of the fact that plaintiff's second amended complaint makes only marginal mention of section 1133, it follows that no cause of action can be maintained under said section. Co-defendants are entitled to judgment as a matter of law on this issue. Accordingly, their motion for summary judgment is **GRANTED** with respect to any claims under section 1133.

### 3. The Section 1104 Claim

 For much the same reasons that plaintiff's section 1133 cannot be maintained, plaintiff's claim under 29 U.S.C. § 1104 also fails. Section 404 of ERISA, which is codified as 29 U.S.C. § 1104, provides in relevant part that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—(A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries..." 29 U.S.C. § 1104(a)(1)(A)(i); *see also Mass. Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 143, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). Section 409, on the other hand, provides that,

[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to

make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109(a). Even though Escobar would ostensibly read section 409 as providing a private right of action to beneficiaries for breach of fiduciary duties, it has been specifically held that since "ERISA's overall structure restrict[s] the scope of § 409 to recovery on behalf of a plan, such a private right is squarely barred...." *Mass. Mut. Life Ins. Co. v. Russell,* 473 U.S. at 154, 105 S.Ct. 3085 (citations omitted).

The second amended complaint contains no specific allegation of breach of fiduciary duties. It merely states that co-defendants' conduct in terminating STD benefits violated section 1104. Similarly, Escobar's submissions in opposition to co-defendants' motion for summary judgment lack any argument in support of such a claim. Given that plaintiff has failed to state a claim under section 1104 and that a private cause of action cannot be brought by a beneficiary of a disability plan, the co-defendants are entitled to judgment as a matter of law with regards to this issue. Thus, with respect to the Section 1104 claim, summary judgment is **GRANTED**.

### 4. Puerto Rico Law Claims: Preemption

Pre-emption under ERISA is expansive in scope. *Rosario–Cordero v. Crowley Towing & Transp. Co.,* 46 F.3d 120, 122 (1st Cir.1995). "[T]he express pre-emption provisions of ERISA are deliberately expansive, and designed to 'establish pension plan regulation as exclusively a federal concern.'" *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 45–46, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (quoting *Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 523, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981)). In this spirit, ERISA's sweeping pre-emption clause specifically provides, with some exceptions not relevant here, that ERISA "supercede[s] any and all State laws [4] insofar as they ... *relate to* any employee benefit plan...." 29 U.S.C. § 1144(a) (emphasis added). A state law, on the other hand, "'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96–97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). Furthermore, ERISA's pre-emptive force is so powerful, that it displaces any state cause of action, *Pilot Life Ins. v. Dedeaux,* 481 U.S. at 44, 107 S.Ct. 1549, "even if the law is not specifically designed to affect such plans, or the effect is only indirect." *D.C. v. Greater Washington Bd. of Trade,* 506 U.S. 125, 130, 113 S.Ct. 580, 121 L.Ed.2d 513 (1992) (quoting *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 139, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990)).

The analysis of pre-emption under ERISA requires the resolution of two central questions: (1) whether the plan at issue is an employee benefit plan; and (2) whether the cause of action "relates to" said employee benefits plan. *McMahon v. Digital Equip. Corp.,* 162 F.3d 28, 36 (1st Cir.1998); *see also Rosario–Cordero v. Crowley Towing & Transp. Co.,* 46 F.3d 120, 124 (1st Cir.1995). With respect to the first question, 29 U.S.C. § 1002 defines "employee benefit plan" to include both "employee pension benefit plans" and "employee welfare benefit plan." *McMahon v.*

---

**4.** "The term 'State law' includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." 29 U.S.C. § 1144(c)(1).

*Digital Equip. Corp.,* 162 F.3d at 36. An employee welfare benefit plan is further defined as:

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death . . .

29 U.S.C. § 1002(1). Both the disability benefits plan and the health care plan at issue here fall within the definitions of employee benefit plan.

▆▆▆ In addition, with respect to the second question, it has been held that a state law relates to an employee benefits plan if one of the following categories of state law are present: "(1) state laws that 'mandate employee benefit structures or their administration,' (2) state laws that 'bind plan administrators to [a] particular choice,' and (3) state law causes of action that provide 'alternative enforcement mechanisms' to ERISA's enforcement regime." *Hampers v. W.R. Grace & Co.,* 202 F.3d 44, 51 (1st Cir.2000) (quoting *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 656, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995)).

▆▆▆ It is apparent from Escobar's second amended complaint that her general tort and breach of contract claims are an attempt to utilize state law as an alternative enforcement mechanism. She seeks damages under state law for the same conduct under which she invokes the appli-

cability of ERISA's civil enforcement provisions, namely the denial of disability benefits. Moreover, it has been repeatedly held that a cause of action "relates to" an ERISA plan when the court must evaluate and interpret the terms of the ERISA regulated plan in order to determine liability under the state law. *Hampers v. W.R. Grace & Co.,* 202 F.3d at 52. That is the case here. Plaintiff asserts causes of action under Puerto Rico tort and breach of contract law for the alleged wrongful denial of health care and disability benefits which in turn requires that the court evaluate and interpret co-defendants' ERISA regulated Plan. Such claims fall squarely within ERISA's civil enforcement provision. Therefore, such causes of action are pre-empted by ERISA and should be dismissed. *Id.* at 54 (holding that the state law contract claim alleged the same conduct as in the ERISA claim and was therefore pre-empted); *Turner v. Fallon Cmty. Health Plan,* 127 F.3d 196, 197–98 (1st Cir.1997) (stating that a state common law breach of contract claim fell within ERISA's civil enforcement regime); *Alamo Rodriguez v. MCS Life Ins. Co.,* 283 F.Supp.2d 459, 468 (D.P.R.2003) (finding that ERISA pre-empted a cause of action under article 1802 of the Puerto Rico Civil Code).

In light of the above, plaintiffs' tort and breach of contract causes of actions are pre-empted by ERISA. As to this issue, the co-defendants are entitled to judgment as a matter of law and their motion for summary judgment is **GRANTED**.

B. *Plaintiff's Motion for Partial Summary Judgment* [5]

Paragraph 27 of plaintiff's second amended complaint alleges that her termi-

---

5. In their motion for summary judgment, the co-defendants also move for summary disposition of plaintiff's claims under SINOT. Since plaintiff has filed a motion for partial sum-

mary judgment on the same issue, I will address the arguments of the parties together in this section of the Report and Recommendation.

nation from employment constitutes an illegal and non-compensated termination in violation of Puerto Rico's Disability Benefit Act, 11 P.R. Laws Ann. § 201 *et seq.* ("SINOT"). Escobar further alleges that under SINOT, she is entitled to compensation for damages suffered as a consequence of co-defendant OMP's refusal to reserve her employment as required by SINOT and under Puerto Rico's Act 80 of May 30, 1976, 29 P.R. Laws. Ann. § 185a (hereinafter "Act 80"). She now moves for partial summary judgment claiming that there is no genuine issue of material fact and that as a matter of law, she is entitled to judgment on her SINOT claim.

Specifically, Escobar contends that under SINOT, an employer must reserve the position held by a worker for a full year from the onset of the disability and to reinstate him or her to the same position. She claims that unable to return to work after April 14, 1999, she commenced to receive SINOT benefits on May 24, 1999 until November 21, 1999. On March 15, 2000, while Escobar had not yet been discharged from her medical treatment, she received a letter from OMP in which she was instructed to return to work within five days of the receipt of the letter. The letter also informed that failure to comply would result in termination on grounds of employment abandonment. Her employment was terminated before April 4, 2000, that is less than one full year since her SINOT benefits commenced. Consequently, plaintiff contends that there is no dispute regarding the fact that OMP failed to reserve her position as required by SINOT and that her termination violated said statutory mandate.

In opposition to Escobar's motion for partial summary judgment, the co-defendants submit that the court must look at the circumstances enumerated by Act 80 to determine if a dismissal was justified or in violation of employment reserve provisions. It is further asserted by OMP that company policy provides that an employee's absence for three or more days without justification or authorization is considered a tacit resignation and/or job abandonment. Similarly, failure to return to work after an authorized absence is also considered job abandonment under company policy. According to OMP, when notice of MCS' denial of benefits to Escobar was received, OMP wrote her a letter requiring that she return to work within five days and that the failure to do so would be construed as job abandonment. OMP maintains that by failing to report to work within the prescribed five days without justification, Escobar found herself in violation of company policy and her actions constituted employment abandonment. In OMP's opinion, job abandonment is a violation so serious that an employer is not required to wait until the conduct is repeated in order to terminate the employee. Finally, OMP argues that nothing in SINOT prevents an employer from requiring that an employee comply with standards of conduct regarding job attendance.

In the alternative, OMP contends that even if the court were to find that termination was not justified, Escobar is not entitled to damages under SINOT. OMP claims that even if there has been a violation of SINOT's reserve provision, Escobar is not entitled to relief inasmuch as she was not mentally or physically capable of discharging her employment duties. In addition, OMP argues that when plaintiff's STD benefits were terminated in September 22, 1999, she was "released" and therefore needed to request reinstatement within 15 days. Since she did not do so, OMP submits that no violation of SINOT occurred.

■ The Puerto Rico Disability Benefit Act, or SINOT, 11 P.R. Laws. Ann. § 201

*et seq.*, establishes an insurance to cover the risk for non-occupational disability. It provides certain monetary benefits to attenuate the loss of wages when a worker is not able to perform the duties of his or her job due to injury or illness unrelated to employment. *Melendez Rivera v. Asociacion Hospital del Maestro*, 2002 WL 1033747, 2002 TSPR 60 (2002) (our translation). The Act provides that

(q) Reinstatement after disability.—In cases of disability for work pursuant to the provisions of this chapter, the employer is compelled to protect the employment position held by the worker at the onset of the disability and to reinstate him/her in the same position, subject to the following conditions:

(1) That the worker petition the employer to be reinstated in his/her employment position within the term of fifteen (15) days, from and after the date the worker was discharged from the hospital, provided said petition has not been made after a lapse of one (1) year from the date of onset of the disability;

(2) that the worker is mentally and physically capable to discharge said employment at the time of requesting such reinstatement from the employer; and

(3) that said employment is available when the worker requests reinstatement. It shall be understood that the employment is available when it is vacant or another worker is engaged therein.

It shall be presumed that the employment was vacant when same was filled by another worker within the thirty (30) days following the date in which the reinstatement petition was made.

If the employer should fail to comply with the provisions of this subsection, he shall be compelled to pay the worker or his beneficiaries the wages that said worker would have earned if he had been reinstated and the employer shall also be liable for the damages he has caused the worker. The worker or his beneficiaries may initiate and prosecute the proper claim for reinstatement and/or damages through an ordinary action in court or through the procedure for the claiming of wages, established in §§ 3118–3132 of Title 32.

11 P.R. Laws Ann. § 203(q).

The Supreme Court of Puerto Rico has held that SINOT may be analyzed together with the provisions of Article 5A (hereinafter "Article 5A") of the Compensation System for Work–Related Accidents Act, 11 P.R. Laws. Ann. § 1, *et seq.*, since they are "almost identical." *Laracuente Santiago v. Pfizer Pharm.*, 2003 WL 21994769, 2003 TSPR 136 (2003) (our translation). Both statutes contain employment reserve provisions; both require that the employer reserve the workers' position for one full year; that the employee request reinstatement within 15 days of discharge; and that the employee be capable of discharging the employment among other things. 11 P.R. Laws Ann. §§ 7, 203(q).

SINOT's employment reserve provision has two separate and distinct dimensions. First, is the requirement that the employer reserve the employment position held by the worker. Second, is the obligation to reinstate the worker to the same position once discharged if he or she requests reinstatement and the other conditions in the statute are present. *See Garcia–Diaz v. Darex Puerto Rico, Inc.*, 148 D.P.R. 364, 375 (1999) (our translation). At issue here is the first requirement, namely the allegation that OMP terminated Escobar before the lapse of one year.

In *Garcia–Diaz v. Darex Puerto Rico, Inc.*, 148 D.P.R. at 378, the Court specifically held that an employee is required to reserve an employee's position for a term of 12 months while he or she is disabled

and receiving treatment. In addition, the Court observed that said requirement prohibits discharge regardless of any consideration as to whether or not the worker would in the future qualify to be reinstated. *Id.* The Court expressly rejected the argument that Article 5A, or SINOT for that matter, provides no remedy whatsoever to an employee discharged during the reserved period but that does recover in time to request reinstatement. *Id.*

In addition to the requirement that the employment position be reserved for one year, SINOT also enumerates the conditions that must be satisfied for reinstatement: (1) the employee must petition for reinstatement within the term of 15 days from and after discharge provided that the petition is made no later than one year from the onset of the disability; (2) at the time of the petition for reinstatement the employee must be mentally and physically capable of performing the duties of the position; and (3) the employment position must be available. *See Melendez–Rivera v. Asociacion Hospital del Maestro,* 2002 TSPR 60 (citing 11 P.R. Laws. Ann. § 203(q)).

The Court has explained that there are also two types of relief that a worker may pursue for a violation of SINOT. The statute itself provides that "[i]f the employer should fail to comply with the provisions of this subsection, he shall be compelled to pay the worker or his beneficiaries the wages that said worker would have earned if he had been reinstated and the employer *shall also be liable for the damages he has caused the worker.*" 11 P.R. Laws Ann. § 203(q) (emphasis added). In other words, if an employer fails to reinstate an employee that requests such reinstatement within the prescribed time and satisfies the other requirements, the employee may initiate an action seeking reinstatement and claiming the wages that he or she would

have earned had he or she been reinstated. *Garcia–Diaz v. Darex Puerto Rico, Inc.,* 148 D.P.R. at 378. The employer is also liable for the damages that a violation of this section caused to the employee. *Id.*

As stated above, there are a number of requirements that a worker must satisfy in order to qualify for reinstatement. If these requirements are not satisfied, the worker ordinarily is not entitled to reinstatement or the wages he would have earned even if he or she was discharged within the reserved period. *Id.* at 378–79. However, this is not the only remedy provided by the statute. The employee may also be entitled to recover the damages caused by the employer's non-compliance with its provisions. *Id.* at 379. It does not matter that the employee would not recover in time to qualify for reinstatement under the statute because the termination itself is illegal if made before the lapse of one year, thus entitling the employee to recover damages. *Garcia–Diaz v. Darex Puerto Rico, Inc.,* 148 D.P.R. at 379. Additionally, it has been held that a worker is not required to request reinstatement in order to recover damages for the employer's failure to reserve his or her position. *Melendez Rivera v. Asociacion Hospital del Maestro,* 2002 TSPR 60; *see also Rivera Rivera v. Insular Wire Prods. Corp.,* 2002 WL 31113917, 2002 TSPR 120 (Sept. 16, 2002).

 Applying these principles to the facts of this case, it is clear that a violation of SINOT occurred when Escobar was discharged from her employment. Escobar maintains that the one year period began to run on May 24, 1999, when she began to receiving SINOT benefits. OMP contends that the one year period began to run on April 14, 1999, the day of the onset of her disability. For purposes of this discussion, this factual dispute is immaterial. The

record establishes that on March 15, 2000, OMP sent Escobar a letter requiring her to return to work within five days. The letter also admonished that failure to do so would result in employment termination due to job abandonment. (Docket No. 53, Ex. 8.) Escobar failed to return to work, and her employment was terminated. (*Id.*) It is unnecessary to determine which date must be used for the computation of the one year because even if the Court agrees with OMP that it is April 14, 1999, termination was premature. There exists no factual dispute; Escobar was discharged before the lapse of one year from the onset of her disability, before she had been discharged and while she still was receiving treatment. It is equally clear that she would not have been able to request reinstatement within the prescribed time. On April 4, 2000, Escobar's daughter informed OMP that plaintiff was receiving benefits from Social Security after being found under a disability and unable to perform any gainful activity. There is nothing in the record to suggest that Escobar would have been able to return to work within one year. As such, she is not entitled to recover damages in the form of the wages she failed to earn had she been reinstated. Simply put, she was not mentally or physically capable of performing the duties of her employment. That does not mean that she cannot recover damages for the illegal termination. *Garcia–Diaz v. Darex Puerto Rico, Inc.*, 148 D.P.R. at 379.

 Finally, it must also be noted that the protection offered by SINOT is not absolute and an employer may still terminate an employee for just cause irrespective of the application of the employment reserve provision. *Id.* at 380. In other words, an employer may discharge an employee in violation of SINOT's employment reserve provision if there is just cause for doing so. *Id.* However, neither SINOT nor the Compensation System for

Work–Related Accidents Act contains a definition of just cause. *Id.* at 380–81. Thus, the Court directs us, applying principles of statutory construction, to look to other statutes *in pari materia. Id.* at 381. The Court stated that to determine the definition of just cause it would look to the circumstances enumerated by Act 80 (Puerto Rico's unjustified discharge statute). *Id.* Act 80 states:

Good cause for the discharge of an employee [from] an establishment shall be understood to be:

(a) That the worker indulges in a pattern of improper or disorderly conduct.

(b) The attitude of the employee of not performing his work in an efficient manner or of doing it belatedly and negligently or in violation of the standards of quality of the product produced or handled by the establishment.

(c) Repeated violations by the employee of the reasonable rules and regulations established for the operation of the establishment, provided a written copy thereof has been timely furnished to the employee.

(d) Full, temporary or partial closing of the operations of the establishment.

(e) Technological or reorganization changes as well as changes of style, design or the nature of the product made or handled by the establishment and in the services rendered to the public.

(f) Reductions in employment made necessary by a reduction in volume of production, sales or profits, anticipated or prevalent at the time of the discharge.

A discharge made by the mere whim or fancy of the employer or without cause relative to the proper and normal operation of the establishment shall not

be considered as a discharge for good cause.

29 P.R. Laws. Ann. § 185b.

OMP's claim of just cause lacks merit. OMP argues that under company policies, if an employee was absent without justification or authorization for more than three days, that employee would be deemed to have tacitly resigned his or her position. Similarly, an employee's conduct in not returning from an authorized absence may be construed as employment abandonment. Based on this, OMP claims that when Escobar's STD benefits were denied, she was required to return to work as requested by the March 15, 2000 letter. Her failure to do so was construed as employment abandonment and according to OMP, just cause for termination under 29 P.R. Laws. Ann. § 185b(c) ("repeated violations by the employee of the reasonable rules and regulations established for the operation of the establishment, provided a written copy thereof has been timely furnished to the employee."). (Exhibit A, Docket No. 74.) This Court disagrees.

■■■ OMP attempts to construe its denial of disability benefits as if Escobar was discharged from treatment. As stated above, the reasonableness of such denial is in controversy and cannot be adjudicated at this stage of the proceedings. Consequently, it is similarly inappropriate to hold as a matter of law that Escobar failed to return to work and is therefore guilty of work abandonment which in turn contravenes OMP's policies so as to constitute just cause for the discharge. Such a finding would produce an anomalous result inasmuch as the court would be holding that an employer is justified in terminating an employee for work abandonment during the same period that the law mandates that an employment position be reserved.

Nevertheless, Escobar failed to allege a cause of action under Act 80 in her second amendment to the complaint. Her attempt to claim the remedies of said statutory scheme will not be allowed.

In sum, there is no genuine issue as to any material fact regarding Escobar's claim that OMP terminated her employment prior to the lapse of one year as prescribed by SINOT. While Defendants object to the R & R's conclusion by stating that the termination of employment was for just cause, this argument, as discussed above, is without merit. Escobar is, accordingly, entitled to partial judgment as a matter of law. The only issue remaining for adjudication as to this claim is the amount of damages, if any, to which Escobar would be entitled.[6] Escobar's motion for partial summary judgment is **GRANTED**. Co-defendants' motion for summary judgment with respect to plaintiff's SINOT claim is **DENIED**.

### 5. Conclusion

In view of the above, co-defendants' motion for summary judgment is **GRANTED** in part and **DENIED** in part. It is **GRANTED** as to Escobar's sections 1133 and 1104 claims inasmuch as no private right of action exists under said sections. It is also **GRANTED** as to Escobar's causes of action under Puerto Rico law since they are pre-empted by ERISA. The motion is **DENIED** as to the denial of STD, LTD and Health Care benefits because there are material issues of fact in controversy precluding a determination of co-defendants' reasonableness. Escobar's motion for partial summary judgment is **GRANTED** since there is no factual dispute that OMP terminated her employ-

---

**6.** Note that she is not entitled to the wages that she failed to earn had she been reinstated because she was not entitled to reinstatement in the first place. She is merely entitled to whatever damages she suffered as a consequence of the premature discharge.

ment without just cause before the lapse of one year from the onset of her disability.

**SO ORDERED.**